No. 25-4476

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

In re Donald J. Trump, et al.,
*Petitioners-Defendants.*

v.

United States District Court of the Northern District of California,
*Respondent,*

American Federation of Government Employees, AFL-CIO, et al.,
*Real Parties in Interest-Plaintiffs.*

_____

ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTICT OF CALIFORNIA
No. 3:25-cv-03698-SI
The Honorable Judge Susan Illston

_____

**REAL PARTIES IN INTEREST-PLAINTIFFS' ANSWER TO PETITION
FOR WRIT OF MANDAMUS AND OPPOSITION TO MOTION FOR STAY**

_____

Elena Goldstein
Skye Perryman
Tsuki Hoshijima
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090
egoldstein@democracyforward.org
sperryman@democracyforward.org

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Corinne F. Johnson
Robin S. Tholin
Alice X. Wang
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
dleonard@altber.com

*Attorneys for Real Parties in Interest-Plaintiffs\**
*\*additional counsel and affiliations on signature pages*

# TABLE OF CONTENTS

Table of Authorities.................................................................. iii

Introduction ...............................................................................1

Background ...............................................................................2

    I.   Plaintiffs' Claims Challenging the EO, Memorandum, and ARRPs .....2

    II.  District Court's Discovery Orders ................................7

    III. Proceedings in this Court..................................................11

Legal Standards.......................................................................12

    I.   Mandamus....................................................................12

    II.  Stay Pending Resolution of the Petition ...............................13

Argument.................................................................................14

    I.   The District Court's Discovery Order Is Not Clearly Erroneous. .......14

        A.  The ARRPs are Relevant to Plaintiffs' Claims. ..............................15

        B.  The ARRPs at Issue Are Not Privileged, and Any Privilege is Overcome. ........................................................................20

            1.  The privilege invoked is qualified and, to the extent it applies at  all, can be overcome by litigation need. . ...............................15

            2.  The ARRPs at issue are not predecisional. ............................22

            3.  Defendanst failed to establish that the ARRPs are deliberative. .......................................................................26

            4.  The District Court did not clearly err in concluding that litigation needs overcome any privilege. .............................29

    II.  The Motion for a Stay Should Be Denied. .........................................34

        A.  No Irreparable Injury Requires a Stay. ...............................34

        B.  The Public Interest Weighs Against a Stay. .....................................35

i

Conclusion ....................................................................................36

Certificate of Compliance ........................................................43

Filer's Attestation .....................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AFGE v. Trump*,
  139 F.4th 1020 (9th Cir. 2025) ...................................................................*passim*

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ...............................................................13

*American Federation of Teachers v. Goldstein*,
  No. 1:25-cv-03072 (S.D.N.Y. May 27, 2025).....................................34

*Assembly of State of Cal. v. Dep't of Com.*,
  968 F.2d 916 (9th Cir. 1992) ........................................................25, 26

*Bauman v. U.S. Dist. Ct.*,
  557 F.2d 650 (9th Cir. 1977) ...............................................................12

*Cheney v. U.S. Dist. Ct.*,
  542 U.S. 367 (2004).............................................................................31

*Clinton v. Jones*,
  520 U.S. 681 (1997).............................................................................31

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980).................................................26, 27, 28

*Doe #1 v. Trump*,
  957 F.3d 1050 (9th Cir. 2020) .............................................................13

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ...............................................................13

*Elev8 Baltimore, Inc. v. Corp. for Nat'l & Cmty. Serv.*,
  No. CV MJM-25-1458, 2025 WL 1865971 (D. Md. July 7, 2025) ...................19

*FTC v. Warner Commc'ns Inc.*,
  742 F.2d 1156 (9th Cir. 1984) .......................................................21, 29

*Gen. Elec. Co. v. EPA*,
  290 F.3d 377 (D.C. Cir. 2002)..............................................................25

iii

*Gray v. First Winthrop Corp.*,
  133 F.R.D. 39 (N.D. Cal. 1990) ............................................................31

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.*,
  No. 24-CV-02220-JST, 2024 WL 4631665 (N.D. Cal. Oct. 29,
  2024) ........................................................................................................31

*Jud. Watch, Inc. v. DOJ*,
  365 F.3d 1108 (D.C. Cir. 2004) ............................................................32

*Kerr v. U.S. Dist. Ct.*,
  511 F.2d 192 (9th Cir. 1975) ................................................................13

*Landry v. FDIC*,
  204 F.3d 1125 (D.C. Cir. 2000) ............................................................22

*Lands Council v. Powell*,
  395 F.3d 1019 (9th Cir. 2005) ..............................................................19

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ................................................................13

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) ............................................................................17

*In re Morgan*,
  506 F.3d 705 (9th Cir. 2007) ..........................................................12, 33

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
  861 F.2d 1114 (9th Cir. 1988) ..............................................................26

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ..............................................................................31

*Nken v. Holder*,
  556 U.S. 418 (2009) ..............................................................................13

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ..............................................................................21

*Pac. Fisheries, Inc. v. United States*,
  539 F.3d 1143 (9th Cir. 2008) ........................................................22, 26

iv

*In re Perez*,
    749 F.3d 849 (9th Cir. 2014) ...............................................................13

*Pizzuto v. Tewalt*,
    136 F.4th 855 (9th Cir. 2025) .............................................................31

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) .........................................................22, 27

*In re S. Bay United Pentecostal Church*,
    992 F.3d 945 (9th Cir. 2021) ...............................................................12

*Sackett v. EPA*,
    566 U.S. 120 (2012) .............................................................................25

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ............................................................32

*Sierra Club v. Trump*,
    963 F.3d 874 (9th Cir. 2020) ...............................................................17

*In re Swift Transp. Co. Inc.*,
    830 F.3d 913 (9th Cir. 2016) ...............................................................33

*Thompson v. U.S. Dep't of Lab.*,
    885 F.2d 551 (9th Cir. 1989) ...............................................................19

*In re Toma*,
    No. 23-70179, 2023 WL 8183567 (9th Cir. Oct. 12, 2023) ...............14

*Trump v. AFGE*,
    No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025)..............*passim*

*Trump v. AFGE*,
    No. 24A1106 (U.S. May 16, 2025) .......................................................8

*In re Trump*,
    No. 25-3034 (9th Cir. May 12, 2025) ...................................................8

*In re United States*,
    895 F.3d 1101 (9th Cir. 2018) .............................................................13

*United States v. Nixon*,
    418 U.S. 683 (1974)...................................................................32

*United States v. U.S. Dist. Ct.*,
    384 F.3d 1202 (9th Cir. 2004) ...............................................31

*U.S. DOGE Service v. CREW,*
    145 S. Ct. 1981 (2025)..........................................................32

*USFWS v. Sierra Club, Inc.*,
    592 U.S. 261 (2021)...............................................................21

*In re Van Dusen*,
    654 F.3d 838 (9th Cir. 2011) .................................................33

*Wolfe v. HHS*,
    815 F.2d 1527 (D.C. Cir. 1987)......................................21, 32

*Wolfe v. HHS*,
    839 F.2d 768 (D.C. Cir. 1988) (en banc)...............................21

## Federal Statutes

5 U.S.C. § 706............................................................................5

**INTRODUCTION**

Plaintiffs—a coalition of unions, nonprofits, and local governments—brought this lawsuit to challenge both the President's Executive Order 14210 (the "EO"), which requires the unprecedented restructuring and downsizing of the federal government, and the actions of federal agencies implementing that order. Plaintiffs' claims are not limited to facial challenges to the lawfulness of the EO and the implementing memorandum by the Office of Management and Budget ("OMB") and Office of Personnel Management ("OPM"), which directed federal agencies to submit Agency RIF and Reorganization Plans ("ARRPs") for approval. Plaintiffs also challenge the agency actions implementing the EO, and they do so on grounds that are independent of the lawfulness of the EO and OMB/OPM Memorandum, including because those agency actions are arbitrary and capricious and contrary to law. The District Court previously granted a preliminary injunction based on some, but not all, of Plaintiffs' claims. The Supreme Court stayed that injunction in an order that was expressly limited to the two theories of facial liability and did not reach any challenge to the lawfulness of agency actions implementing the EO.

Following the Supreme Court's stay decision, Defendants resumed implementation of the EO, including through large-scale reductions in force ("RIFs"). The District Court appropriately granted expedited discovery into the

1

ARRPs, whose legality was not addressed by the Supreme Court's stay order. Defendants seek mandamus to reverse that discretionary order, but there is no valid basis for this Court to take the extraordinary step of halting a District Court's management of discovery into claims that are indisputably pending before it. The Court should deny Defendants' mandamus petition and stay motion.

## BACKGROUND

### I.    Plaintiffs' Claims Challenging the EO, Memorandum, and ARRPs

In February 2025, Executive Order 14210 directed agencies to "commence[] a critical transformation of the Federal bureaucracy" by engaging in large-scale RIFs downsizing the federal civil service and reorganizing the structure of federal agencies. Add.158; *AFGE v. Trump*, 139 F.4th 1020, 1028 (9th Cir. 2025). Soon after, OMB and OPM issued a memorandum implementing that EO, which directed agencies to submit ARRPs "to OMB and OPM for review and approval" under tight time deadlines in March and April 2025. Add.164-65; *AFGE*, 139 F.4th at 1028.

The ARRP documents are a creation of the OMB/OPM Memorandum. Add.159, Add.162. The Memorandum required every agency to submit what OMB and OPM called a "Phase 1 ARRP" to OMB and OPM for "review and approval no later than March 13, 2025." Add.164. OMB and OPM provided instruction on the contents of those "Phase 1 ARRP" documents, which "shall

focus on initial agency cuts and reductions." Add.164-65. The Memorandum also directed agencies to submit a "Phase 2 ARRP" to OMB and OPM for "review and approval no later than April 14, 2025." Add.165. OMB and OPM provided further instruction on the contents of those "Phase 2 ARRPs," which focus on reorganizing what remains of agencies after the initial large-scale RIFs. Add.165-67.

As established in the record supporting Plaintiffs' requests for preliminary injunctive relief, agencies began submitting ARRPs for OMB/OPM approval that, among other things, proposed dramatic reductions from existing federal workforce numbers. *See* Supp.Add.121-23 (collecting evidence). Agencies began implementing these approved ARRPs in March and April 2025 through specific actions including RIFs, closing offices and programs (including those serving mandatory statutory functions), and placing federal civil servants who received RIF notices on immediate administrative leave. *Id.*; *see* Supp.Add.67-69; *AFGE*, 139 F.4th at 1028. In addition to the approvals of the ARRPs, the evidence demonstrated that OMB, OPM and DOGE provided specific direction to agencies regarding the numbers of employees to cut, personnel spending to reduce, offices and programs to close, and the timing of those actions. Supp.Add.150-153, 256-57, 264, 315. At times, OMB, OPM, and DOGE rejected ARRPs for not cutting enough of the workforce. Supp.Add.103.

Defendants have taken the position from the outset that they need not reveal their plans to the public (nor to the affected employees, their unions, or even Congress) until RIF notices are issued, at which time many employees who received such notices have been locked out of their offices and placed on leave. Supp.Add.67; *see*, *e.g.*, Supp.Add.313, 322, 329. The implementation of these directives has often been chaotic and lacking in transparency. For example, with respect to 10,000 employees at the Department of Health and Human Services ("HHS"), HHS later admitted a high error rate reducing positions serving important functions (such as testing for lead in children, or monitoring black lung disease in miners), at times resulting in reversal of layoff decisions. Supp.Add.106, 256-57, 339-40, 343, 346.

On April 28, 2025, Plaintiffs filed suit to challenge the EO and agency implementation of the EO. Supp. Add.208. Plaintiffs sought a temporary restraining order ("TRO") and then a preliminary injunction to enjoin the reorganization and RIF actions before it was too late to remedy any adverse effects. Plaintiffs brought seven claims, contending that the EO was ultra vires and an unconstitutional intrusion on Congress's Article I authority; that the actions by OMB, OPM, and DOGE to implement the EO, including the OMB/OPM Memorandum as well as other directives and requirements imposed on agencies, were ultra vires; that those actions of OMB, OPM, and DOGE were not in

4

accordance with law, in excess of authority, and arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2)(A),(C); that OMB, OPM, and DOGE violated the procedural requirements of the APA, 5 U.S.C. §706(2)(D); and that the actions of the Federal Agency Defendants[1] implementing the directives of the President, OMB, OPM, and DOGE were contrary to law, in excess of authority, and arbitrary and capricious in violation of the APA, 5 U.S.C. §706(2)(A), (C). Add.140-49. These claims included, but were not limited to, facial challenges to the legality of the EO and OPM/OMB Memorandum. *Id*.

On May 9, 2025, the District Court granted a TRO halting the further implementation of the Executive Order, the OMB/OPM Memorandum, and ARRPs. Supp.Add.200. On May 22, 2025, the District Court issued a preliminary injunction to maintain the status quo pending litigation but stayed the provisions of its order that imposed retrospective relief. Supp.Add.107. The District Court reserved ruling on several APA claims against OMB, OPM, DOGE and Federal Agency Defendants, and explained that "a full review of the ARRPs will significantly aid the Court's review" of those remaining claims. Supp.Add.104.

---

[1] "Federal Agency Defendants" refers to the agency defendants other than OMB, OPM, and DOGE. Add.60; Supp.Add.66.

5

Defendants sought an emergency stay pending appeal. In support of their stay motion in this Court, Defendants represented that the injunction halting implementation of the ARRPs had interrupted "[m]ultiple RIFs [that] were set to be noticed within the next month, and dozens [that] were set to occur during that period." Stay Motion at 23, *AFGE v. Trump*, No. 25-3293 (9th Cir. May 23, 2025), Dkt. 4.1. This Court denied Defendants' emergency stay motion. *AFGE*, 139 F.4th at 1029.

Defendants subsequently sought a stay from the Supreme Court. They represented that the injunction halting ARRP implementation had imposed "immediate consequences" on Defendants because "40 RIFs in 17 agencies" "affecting thousands of federal employees" had been "in progress." Stay Application at 32-33, *Trump v. AFGE*, No. 24A1174 (U.S. June 2, 2025).[2]

On July 8, 2025, the Supreme Court granted Defendants' request for a stay of the injunction pending appeal. *Trump v. AFGE*, No. 24A1174, 2025 WL 1873449, at *1 (U.S. July 8, 2025). The Supreme Court's order stated that "[b]ecause the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful—and because the other factors bearing on whether to grant a stay are satisfied—we grant the application." *Id.* at *1. In doing

---

[2] As the District Court subsequently learned, this count was erroneous because it included RIFs at non-defendant agencies. Dkt. 8.1.

6

so, the Court made clear that its conclusion about likely success on the merits was limited to Plaintiffs' facial challenge to the EO and Memorandum, and that it was not reaching the legality of the ARRPs: "We express no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum." *Id.* As the Supreme Court explained, the legality of ARRPs was "not before this Court" because "[t]he District Court enjoined further implementation or approval of the plans based on its view about the illegality of the Executive Order and Memorandum, not on any assessment of the plans themselves." *Id.* Thus, the Court expressly left for the District Court to decide in the first instance the lawfulness of agencies' ARRPs. *Id.* at *1 (Sotomayor, J., concurring) (confirming that the Supreme Court had "no occasion to consider whether [the ARRPs] can and will be carried out consistent with the constraints of law" and "le[ft] the District Court free to consider those questions in the first instance").

## II.    District Court's Discovery Orders

Defendants' petition asks this Court to reverse the District Court's assessment of Defendants' assertion of a qualified deliberative process privilege to maintain secrecy over its ARRPs in the wake of the Supreme Court's stay decision. Add.1-11.  The District Court's considered decision to require Defendants to produce the ARRPs *in camera* came after the District Court gave Defendants

7

multiple opportunities to justify that qualified privilege and reflected careful consideration of Plaintiffs' claims. *Id*.

The District Court first ordered the production of ARRPs in its May 9, 2025 TRO, expressly for the purpose of further factual development pertaining to claims on which it had reserved judgment. Supp.Add.239. The District Court explained that "the release of the ARRPs will significantly aid the Court's review of the merits of [certain] APA claims," Supp.Add.236, by allowing it "to evaluate the individual ARRPs and what roles OMB, OPM, and DOGE have played in shaping them," Supp.Add.238. Relying on "the Court's inherent powers to manage discovery," the District Court ordered expedited production by May 13, 2025 of ARRPs submitted to, or approved by, OMB and OPM. Supp.Add.238-39.

Defendants moved for a protective order or for reconsideration, raising the deliberative process privilege for the first time and relying on a single OMB declaration that broadly asserted the privilege over all ARRPs. Add.173-86.[3] The

---

[3] Without waiting for the District Court's resolution of reconsideration, Defendants filed a mandamus petition accompanied by an emergency stay motion in this Court. Petition, *In re Trump*, No. 25-3034 (9th Cir. May 12, 2025), Dkt. 1.1. Then, without waiting for this Court to rule on that request, Defendants asked the Supreme Court as well for an emergency stay of the discovery order. Stay Application, *Trump v. AFGE*, No. 24A1106 (U.S. May 16, 2025). Defendants eventually withdrew that stay request in the Supreme Court and withdrew the petition in this Court. Withdrawal Letter, *Trump v. AFGE*, No. 24A1106 (U.S. May 23, 2025); Motion to Withdraw, *In re Trump*, No. 25-3034 (9th Cir. May 30, 2025), Dkt. 39.1.

District Court stayed the production deadline to allow it to consider the privilege, Add.169, and granted reconsideration of its production order, Add.30. The District Court noted that "the parties characterize the contents of the ARRPs in starkly different terms" and that to assess privilege, "the Court would benefit from a better understanding of [ARRPs'] contents." Add.33. It therefore ordered Defendants to produce ARRPs from four agencies for *in camera* and counsel's-eyes-only review. Add.33-34. Defendants did not seek a stay or review of this order, and they provided the documents. Add.29.

After consideration of the ARRPs *in camera*, the District Court determined that the OMB declaration supporting Defendants' privilege assertion was inadequate. *Id*. The District Court accordingly offered Defendants the opportunity to submit further declarations from the four agencies for which Defendants had provided ARRPs for *in camera* and counsel's-eyes-only review, and to suggest any proposed redactions segregating deliberative material. *Id*.

Following the Supreme Court's stay decision, Plaintiffs asked the District Court to confirm its prior order granting expedited discovery of ARRPs. Add.12-26. The District Court, in an order directing a response from Defendants, expressed its view that "[t]he content of the ARRPs … remains squarely at issue in this case" following the Supreme Court's stay decision. Supp.Add.60. The District Court also stated its view—based on its *in camera* review of ARRPs from

9

four agencies—that "at minimum, the final versions of the ARRPs at the 17 agencies referenced before the Supreme Court are not covered by the deliberative process privilege." *Id.* The Court further stated that it was "not inclined" to accept Defendants' proposed redactions, which "cover close to all the material at issue." *Id.*[4]

On July 18, 2025, the District Court issued the order that is the subject of this mandamus petition, which granted in part and denied in part Defendants' motion for protective order with respect to the ARRPs. Add.1-11. The District Court rejected Defendants' position that the Supreme Court's stay decision "effectively ends this case," Add.4 (quoting Supp.Add.42), explaining the nature and extent of Plaintiffs' claims that remain, and concluding again that "the content of the ARRPs thus remains squarely at issue in this case," Add.5. As to the deliberative process privilege, the District Court "question[ed] whether ARRPs that have been approved by OMB and OPM in any fashion remain 'predecisional,'" but, even assuming that "at least some ARRPs" may contain predecisional and deliberative materials, found that the qualified privilege was overcome by the

---

[4] The District Court also ordered Defendants to identify the "about 40 RIFs in 17 agencies" represented to the Supreme Court that were not reflected in the record before the District Court. Supp.Add.60. Defendants eventually complied with that order and acknowledged that some of those agencies were not actually enjoined (and were not even Defendants in this case). Dkt. 8.1; Supp.Add.1, 6.

10

importance of ARRPs to the litigation.  Add.7.  The District Court nonetheless

issued a protective order limiting distribution of ARRPs at this stage "to plaintiffs'

counsel and the Court only."  Add.9.  The District Court also authorized

Defendants to redact any material addressing union negotiating strategy but

warned Defendants "not to abuse this allowance" and rejected the "near-total

redactions" that Defendants had previously proposed.  Add.9.

## III.  <u>Proceedings in this Court</u>

Defendants filed this mandamus petition alongside a motion for

administrative stay and stay pending mandamus.  Dkt. 1.1 ("Pet.").  This Court

granted an administrative stay, Dkt. 5.1, and set a simultaneous briefing schedule

for Plaintiffs' answer to the petition and response to the stay motion, Dkt. 6.1.

The Court also invited the District Court to respond to the petition.  Dkt 6.1;

Fed. R. App. P. 21(b)(4).  The District Court did respond, providing this Court with

information revealed in a filing by Defendants after the challenged order issued.

Dkt. 8.1.  In that filing, Defendants disclosed the basis for their representations to

the Supreme Court regarding the number of RIFs that were enjoined by the

preliminary injunction.  As the District Court explained, Defendants' stay

application to the Supreme Court contained a "discrepancy [that] is not

insignificant" regarding the number of RIFs that were halted by the preliminary

injunction (overstanding the number by a quarter).  Dkt. 8.1; Supp.Add.1, 6.  The

11

District Court concluded that this discrepancy "further underscores the Court's previous finding that any deliberative process privilege, if it exists at all, is overridden by 'the need for accurate fact-finding in this litigation….'" Dkt. 8.1 at 2 (quoting Add.7).

## LEGAL STANDARDS

### I.    <u>Mandamus</u>

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes" such as "judicial usurpation of power, or a clear abuse of discretion." *In re S. Bay United Pentecostal Church*, 992 F.3d 945, 949 (9th Cir. 2021) (cleaned up). This Court considers: (1) the availability of any other adequate relief, (2) whether petitioner will be "damaged or prejudiced in any way not correctable on appeal," (3) whether the district court's order is "clearly erroneous as a matter of law," (4) whether the order makes an "oft-repeated error" or "manifests a persistent disregard of the federal rules," and (5) whether the order raises new and important problems or issues of first impression. *Id.*; *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654 (9th Cir. 1977).

The absence of the third factor, clear error, is dispositive. *In re S. Bay*, 992 F.3d at 949. Clear error is a high bar, and where there is "no prior Ninth Circuit authority [that] prohibited the course taken by the district court, its ruling is not clearly erroneous." *In re Morgan*, 506 F.3d 705, 713 (9th Cir. 2007). And even

when the above factors are met, mandamus "is at bottom discretionary." *In re United States*, 895 F.3d 1101, 1104 (9th Cir. 2018).

The drastic remedy of mandamus is generally "unavailable in the discovery context." *In re Perez*, 749 F.3d 849, 854 (9th Cir. 2014). This Court is "particularly reluctant to interfere with a district court's day-to-day management of its cases," and "because the district court has discretion to control discovery, it is hardly ever the case that a petitioner's right to a particular result is clear and indisputable." *Id.* (cleaned up); *see also Kerr v. U.S. Dist. Ct.*, 511 F.2d 192, 199 (9th Cir. 1975).

## II.    <u>Stay Pending Resolution of the Petition</u>

A stay pending appeal is also an "extraordinary request," *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021) (cleaned up), and "an exercise of judicial discretion," *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). In assessing a stay request, courts consider the likelihood of success on the merits; irreparable injury absent a stay; injury to other parties; and the public interest. *Nken*, 556 U.S. at 434. If a stay applicant cannot show irreparable harm, "a stay may not issue," regardless of the other factors. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011)). The

13

same standard applies to a stay pending a mandamus petition. *In re Toma*, No. 23-70179, 2023 WL 8183567, at *1 (9th Cir. Oct. 12, 2023).

## ARGUMENT

### I.   The District Court's Discovery Order Is Not Clearly Erroneous.

The District Court did not err in rejecting Defendants' blanket assertion of a qualified privilege, including by rejecting Defendants' argument that nothing in these ARRPs could ever be relevant to any of Plaintiffs' claims.  Defendants' petition is predicated on a fundamentally incorrect interpretation of both the Plaintiffs' claims and the Supreme Court's stay order to argue that the ARRPs could never be relevant or discoverable with respect to any remaining viable claims.  Plaintiffs therefore address the threshold relevance arguments first, as did the District Court.  Add.1-11.  Plaintiffs next address the Court's application of the qualified privilege in light of Plaintiffs' claims, properly understood.

The bottom line is that, to the extent the privilege even applies to these documents (some of which have been approved and implemented and thus reflect final agency action, *AFGE*, 139 F.4th at 1038-39; Supp.Add.102-03), the District Court did not clearly err in finding that the qualified privilege was overcome given the centrality of ARRPs to this litigation.  After all, the Supreme Court left it for the District Court to determine in the first instance the legality of any ARRP produced or approved pursuant to the Executive Order, and that is what the District

14

Court is appropriately proceeding to do.  Because nothing in the District Court's

decision is clearly erroneous, both the mandamus petition and the request for a stay

should be denied.

### A.    The ARRPs are Relevant to Plaintiffs' Claims.

The ARRP documents at issue were mandated by the OMB/OPM

Memorandum implementing the EO, and they outline the federal agencies' actions

to implement the orders to reorganize and engage in large-scale RIFs reducing their

workforce, including the elimination of programs, offices, and programs directed

by the Administration.  Add.162-67.  These documents thus reflect the decisions of

the agencies and, as approved, OMB and OPM, with respect to implementation of

the Executive Order.  They reveal unlawful and arbitrary and capricious action

taken without proper consideration of agencies' authorized functions and needs.[5]

The District Court thus correctly concluded that ARRPs are relevant

notwithstanding the Supreme Court's decision to stay the preliminary injunction.

Add.4-7.  The District Court rejected Defendants' argument that the Supreme

---

[5] Plaintiffs present this publicly filed brief without discussing the specific contents of the ARRPs of four Federal Agency Defendants presented *in camera*, but it is Plaintiffs' position those documents support Plaintiffs' claims in this case. The ARRP in the public record that Plaintiffs were able to acquire from a non-defendant agency reflects the nature and procedures of OMB/OPM/DOGE decision-making.  Supp.Add.150, 164-171.

15

Court's stay decision "effectively ends this case," Add.4 (quoting Supp.Add.42), concluding that ARRPs "remain[] squarely at issue in this case," Add.5.

Defendants make three arguments on relevance, all of which lack merit: that the ARRPs cannot be relevant to any "viable" claim after the Supreme Court stay order, that Plaintiffs' APA claims cannot challenge future actions, and that APA claims must be resolved on an administrative record that necessarily would not include the ARRPs. Pet.13-17.

First, the District Court correctly concluded Plaintiffs have multiple viable ultra vires and APA claims that were not addressed by the Supreme Court's stay order, which addressed only the legality of the Executive Order and OMB/OPM Memorandum. The Supreme Court's decision "express[ed] no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum." Add.4 (quoting *AFGE*, 2025 WL 1873449, at *1). Instead, the Supreme Court left the District Court to decide the lawfulness of the ARRPs "in the first instance." Add.5 (quoting *AFGE*, 2025 WL 1873449, at *1 (Sotomayor, J., concurring)).

Defendants argue that all of Plaintiffs' claims turn on a single core theory about the legality of the Executive Order and the OMB/OPM Memorandum— which the Supreme Court has now rejected. Pet.13. But that is not the case. The District Court never addressed Plaintiffs' challenge to the actions of OMB, OPM,

16

and DOGE as arbitrary and capricious, Supp.Add.104, so that claim was not a basis for the preliminary injunction that the Supreme Court considered in its stay decision. Add.145-46. Nor did the District Court previously address, or the Supreme Court foreclose, Plaintiffs' challenges to actions of OMB, OPM, and DOGE *other* than the OMB/OPM Memorandum, including their approvals of the ARRPs, as ultra vires, contrary law, exceeding authority and arbitrary and capricious under the APA. Add.141-46. Finally, no court has addressed Plaintiffs' challenges to the actions by Federal Agency Defendants implementing the Executive Order and ARRPs as contrary to law, exceeding authority, and arbitrary and capricious under the APA. Add.147-49. Those claims are independent of the claims that Defendants contend have been resolved by the Supreme Court because the challenged actions are unlawful for reasons beyond the facial unlawfulness of the Executive Order and OMB/OPM Memorandum.[6]

---

[6] Plaintiffs do not concede that the Supreme Court's stay order is a merits ruling as to the claims that the Supreme Court did address. *E.g.*, *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) (a stay decision "is not a ruling on the merits"); *Sierra Club v. Trump*, 963 F.3d 874, 887 (9th Cir. 2020) (concluding that Sierra Club had available causes of actions despite Supreme Court emergency stay order suggesting otherwise), *vacated and remanded on other grounds sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021); *see also* Add.4 n.3 (recognizing that in light of the lack of explanation, "this Court cannot say whether the Supreme Court determined the claims underlying the preliminary injunction fail as a matter of law or if the evidentiary record has not yet sufficiently developed to support the claims."). However, this Court needs not reach that question to

Second, Defendants argue that Plaintiffs' challenge to unspecified future agency action is not a cognizable APA claim. Pet.14. But the District Court and this Court already concluded that OMB and OPM have approved ARRPs and that those approvals are final agency actions. *AFGE*, 139 F.4th at 1038-39; Supp.Add.102-03. The record also establishes final agency actions to implement the ARRPs beginning in March 2025 and continuing until the temporary restraining order on May 9, 2025, and then resuming after the Supreme Court's July 8 stay. Supp.Add.20 n.1, 32 n.9, 201-03, 207. OMB and OPM approvals of ARRPs and agency actions implementing ARRPs are not, as Defendants claim, vague future possibilities. Rather, they are final actions that agencies have taken, or are taking, with real-world consequences for Plaintiffs and their members. ARRPs are "plainly relevant," Add.6, to the District Court's understanding and review of those actions.

Third, Defendants argue that APA review is on an administrative record, and the ARRPs would not be part of the administrative record with respect to any of Plaintiffs' APA claims. Pet.15. To start, the ARRPs are relevant to Plaintiffs' ultra vires claims, which are not limited to an administrative record. In any case, this Court and the District Court previously found that OMB/OPM's approvals of

--------

resolve this mandamus petition because Plaintiffs have other viable claims that the Supreme Court did not address.

18

ARRPs are final agency actions, and the agency actions implementing those approved ARRPs are final agency actions as well. *AFGE*, 139 F.4th at 1038-39; Supp.Add.102-03; *e.g.*, *Elev8 Baltimore, Inc. v. Corp. for Nat'l & Cmty. Serv.*, No. CV MJM-25-1458, 2025 WL 1865971, at *19 (D. Md. July 7, 2025) (citing cases finding agency reorganization actions to be final action). It cannot be reasonably disputed that the ARRPs would properly be part of the administrative record regarding the challenge to those final agency actions. To claim otherwise disregards the basic rule that the administrative record must contain "all documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989). And, although Defendants argue that ARRPs would not be part of any administrative record because they are deliberative, that argument simply assumes their unsupported conclusion that the ARRPs have never been approved, and lacks merit for the reasons explained in Section I.B below. Plaintiffs should not be required to litigate claims expressly left open by the Supreme Court without access to the key documents in Defendants' possession. In any case, the District Court did not clearly err when it concluded that even if ARRPs were not part of the record, they may likely be considered as extra-record evidence "necessary to determine whether the agency has considered all relevant factors and has explained its decision." Add.6 (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)).

19

For all these reasons, the District Court's conclusions with respect to the relevance of these documents to Plaintiffs' claims, properly understood and in light of the Supreme Court's stay decision, were not erroneous. Neither was the Court's analysis of the qualified privilege in light of this accurate understanding of the relevance of ARRPs to this litigation, as Plaintiffs discuss next.

### B. The ARRPs at Issue Are Not Privileged, and Any Privilege is Overcome.

ARRPs are not, as Defendants contend, pre-decisional and deliberative documents that are categorically privileged. Pet.11-12. The premise of Defendants' argument is their assertion that ARRPs are never final and somehow always in flux. But that assertion is contrary to the record, Defendants' own representations to this Court and the Supreme Court regarding the status of these plans, and this Court's prior conclusions regarding final agency action, *see AFGE*, 139 F.4th at 1038-39. In light of the record, the District Court found it likely that "at minimum, the final versions of the ARRPs at the 17 agencies referenced before the Supreme Court are not covered by the deliberative process privilege," Supp.Add.60, although it did not definitively resolve the issue because it found the qualified privilege to be overcome regardless, App.7-8.

20

### 1) The Privilege Invoked Is Qualified and, to the Extent it Applies at All, Can Be Overcome by Litigation Need.

The deliberative process privilege is a qualified privilege whose purpose is to promote good government by protecting the quality of agency decisions. *FTC v. Warner Commc'ns Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975)). The privilege has common law, not constitutional, roots. *Wolfe v. HHS*, 839 F.2d 768, 773 n.5 (D.C. Cir. 1988) (en banc); *Wolfe v. HHS*, 815 F.2d 1527, 1532-33 & n.5 (D.C. Cir. 1987) *vacated on other grounds*, 839 F.2d 768 (rejecting argument that communications involving OMB are entitled to constitutional privilege).[7] The privilege is a qualified one, and can be overcome if the "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Warner Commc'ns*, 742 F.2d at 1161.

To qualify for the privilege, a document must be both (1) predecisional, having been "generated before the adoption of an agency's policy or decision," and (2) deliberative, "containing opinions, recommendations, or advice about agency policies." *Warner Commc'ns*, 742 F.2d at 1161. The privilege does not protect factual material unless the facts at issue are interwoven with deliberative material

---

[7] These and other cases on privileges under FOIA Exemption Five are relevant to the extent that the FOIA exemption "incorporates the privileges available to Government agencies in civil litigation." *USFWS v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021).

and not segregable.  *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

The privilege must be justified with specificity.  Generally, a government declarant must provide "a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000).  That includes a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021).

### 2)    The ARRPs At Issue Are Not Predecisional.

ARRPs cannot be predecisional once agencies have begun implementing them.  Record evidence previously established—and Defendants did not deny— that agencies were already implementing ARRPs pursuant to OMB and OPM's approval and direction as of early May.  Supp.Add.264 (as of May 1, 2025, RIFs had begun at Americorps, Environmental Protection Agency, General Services Administration, Department of Health and Human Services, Department of Housing and Urban Development, Department of Labor, and Small Business Administration); Supp.Add.207 (finding that "RIFs have started at multiple agencies"); *AFGE*, 139 F.4th at 1028.

The decision to implement is a final one, whether made by agencies or directed by OMB, OPM, or DOGE. On this record, ARRPs that are already being implemented must have been approved, under the plain language of the OMB/OPM Memorandum that established these documents and the process for approval. That Memorandum did not create a "living" document that remains pre-decisional and in flux: it instructed each agency to submit by a specific deadline a "Phase 1 ARRP" for approval, and then submit by another deadline a different, later "Phase 2 ARRP." Add.164-65. The Memorandum did not say those documents are never final and always subject to agency revision.[8] Add.162-67. The Memorandum was also explicit that no agency providing direct services to the public (which likely includes many, if not all, of the Federal Agency Defendants) could implement any RIF or other action without specific OMB and OPM certification and approval. Add.167; *see also* Supp.Add.96 (finding that "OMB/OPM 'approval,' whether formal or otherwise, is a necessary triggering step in the agencies' current RIF and reorganization processes").

When the District Court's preliminary injunction prohibited agencies from taking any further action to implement ARRPs, Supp.Add.108, Defendants told the Supreme Court and this Court that the preliminary injunction had halted forty RIFs

---

[8] That the Memorandum called for a later report (a different document) to be submitted reporting how implementation of these actions is proceeding certainly does not undermine the finality of the ARRPs.

23

that were already "in progress" and "were set to occur" at seventeen agencies. Stay Application at 32-33, *Trump v. AFGE*, No. 24A1174 (U.S. June 2, 2025); Stay Motion at 23, *AFGE v. Trump*, No. 25-3293 (9th Cir. May 23, 2025), Dkt. 4.1.  As the District Court reasoned, "[i]f defendants considered th[o]se RIFs [to be] enjoined by the Court's preliminary injunction, then it follows that the RIFs resulted from the defendant agencies' ARRPs."  Supp.Add.60.  After the Supreme Court stayed the preliminary injunction and allowed Defendants to resume implementing ARRPs, the District Court found that "defendants are moving forward with RIFs" and that they have "begun to implement elements of ARRPs without transparency to the general public or the affected federal employees." Add.8; Supp.Add.20 n.1 (citing reports of RIFs at the Department of Health and Human Services and the State Department).  This course of events shows that the ARRPs at issue are not predecisional.  As the District Court put it: "if the ARRPs are non-final planning documents that do not commit an agency to take any specific action, pursuant to *what*, then, are the agencies implementing their large-scale reorganizations and RIFs?"  Add.10.

Furthermore, this Court, in reviewing this preliminary record evidence, already concluded that OMB and OPM approvals of the submitted ARRPs are final agency action, even if agencies must take additional steps to implement those decisions.  *AFGE*, 139 F.4th at 1038-39; Supp.Add.102-03.  These documents and

their contents reflect decisions that were already made in March, April, and May, before further implementation was enjoined—and therefore cannot be characterized as pre-decisional.[9]

Ignoring this record and this Court's prior conclusions, Defendants rely on an OMB declaration that makes a sweeping claim that "[n]o ARRP is ever 'final'" because ARRPs may be reconsidered as circumstances change. Add.185. But Defendants may not avoid revealing their decisions by perpetually labeling them as non-final. "Any memorandum always will be 'predecisional' if referenced to a decision that possibly may be made at some undisclosed time in the future." *Assembly of State of Cal. v. Dep't of Com.*, 968 F.2d 916, 921 (9th Cir. 1992); *cf. Sackett v. EPA*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal."); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002) (no action "would ever be final" if the possibility of "future revision in fact could make agency action non-final").

---

[9] Plaintiffs brought this case on behalf of only a particular subset of the hundreds of existing federal agencies (all of which were subject to the President's order and the OMB/OPM Memorandum): those for which public information confirmed that implementation of the Executive Order had begun or was imminent. Supp.Add.258.

ARRPs that have been approved and are already being implemented cannot be kept secret based on the possibility of future revision. Those ARRPs reflect the reorganization actions that Defendants have decided to pursue, so they are not predecisional.

### 3) Defendants Failed to Establish that the ARRPs are Deliberative.

The District Court was correct to approach the blanket claim that these documents contain only or even mostly deliberative material with skepticism. Initially, Defendants' characterization contradicts the plain language of the OMB/OPM Memorandum, which requires the submission of substantial factual material. Add.164-67 (requiring, for example, a list of subcomponents that provide direct services and other information about agency functions and organization). Factual material is not deliberative. *Pac. Fisheries*, 539 F.3d at 1148.

The contents of ARRPs as required by the OMB/OPM Memorandum do not include candid internal discussion, such as "documents which reflect the personal opinions of the writer rather than the policy of agency" and documents "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also Assembly of State of Cal.*, 968 F.2d at 921 (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1119

26

(9th Cir. 1988) (privilege applies "to the extent that [documents] reveal the mental processes of decision-makers").

Nothing in the record shows that disclosure of these ARRPs would harm internal agency deliberations. Establishing the deliberative process privilege requires agencies to "concretely explain how disclosure 'would'—not 'could'— adversely impair internal deliberations." *Reps. Comm. for Freedom*, 3 F.4th at 369-70. Defendants did not make that specific showing of harm to deliberative processes, nor could they. ARRPs that agencies submitted to OMB and OPM for approval, and which have been approved, reflect agency policy decisions. Those decision documents do not reflect candid, personal mental processes whose disclosure "is likely to adversely affect the purposes of the privilege," which is to promote candor in internal discussions "within the agency." *Coastal States*, 617 F.2d at 866.

An example ARRP by a nonparty federal agency confirms these conclusions. Supp.Add.150, 164-171. Because Defendants have resisted disclosure at every turn, this ARRP is the only example currently in the public record in this case. As that ARRP shows, much of the document is purely factual—which is consistent with OMB and OPM's requirements for the content of ARRPs. Add.164-67. And any nonfactual parts of that ARRP do not reflect the kind of candid and personal deliberations that would betray "the give-and-take of the consultative process."

27

*Coastal States*, 617 F.2d at 866; Supp.Add.164-171.  The ARRP reflects the agency decision that resulted from its own internal deliberative process, rather than providing a window into the give-and-take that led to the agency's decision. Defendants have not shown that the public disclosure of that ARRP has resulted in any harm to deliberative processes.

The District Court also reviewed ARRPs from four other agencies *in camera* before finding it likely that, at a minimum, approved ARRPs that are already being implemented are not entitled to deliberative process privilege.  Supp.Add.60. The District Court's decision does not rely on specific findings about those ARRPs reviewed *in camera*, and this Court need not make such findings in the first instance.  But even a general review of those ARRPs readily undermines the broad-brush assertions in Defendants' declaration, made without reference to any specific ARRP, that "ARRPs include highly sensitive information that would seriously undermine agency operations if they were released."  Add.185.  And again, Defendants have not shown that the limited disclosure of those ARRPs has resulted in any harm to deliberative processes.

The District Court gave Defendants multiple opportunities to establish the privilege, and Defendants failed to meet their burden.  In particular, the court gave Defendants a chance to propose redactions of truly predecisional and deliberative parts of ARRPs, but Defendants "c[a]me back only with near-total redactions."

28

Add.9.  Because Defendants have not justified their privilege assertion, the District Court's order is not clearly erroneous.

### 4)    The District Court Did Not Clearly Err in Concluding that Litigation Needs Overcome Any Privilege.

The District Court did not err in concluding that, even assuming that ARRPs are privileged, "the need for accurate fact-finding in this litigation overrides any interest in non-disclosure."  Add.7.  As Defendants concede, this is the "relevant" question with respect to this Petition: if the Court did not err in resolving this test, that is dispositive.  Pet.13.  Indeed, the District Court correctly identified and applied each of the pertinent factors: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  Add.7 (quoting *Warner Commc'ns*, 742 F.2d at 1161).

As to the first factor, ARRPs are relevant to Plaintiffs' claims for the reasons explained above.  *Supra* Section I.A.  As to the remaining factors, the District Court correctly found (and Defendants do not dispute) that Defendants have maintained secrecy over ARRPs, leaving no other source of evidence, and that Defendants' actions are the focus of the litigation.  Add.7-8.  The District Court further concluded, in a finding that is entitled to deference, that Defendants' claims of harm were "specious" and that limited disclosure would not "chill future frank

29

and independent discussions within agencies." Add.8.  Indeed, notwithstanding the
fact that four ARRPs were produced in camera and to Plaintiffs' counsel over two
months ago, Defendants have made no showing whatsoever that any harm has
resulted or is threatened.  All pertinent factors support overcoming the asserted
privilege.

Defendants' disclosure of ARRPs is particularly warranted where
Defendants have made secret decisions to reorganize agencies and "have not
publicly released these plans despite requests from the public, employees, and
members of Congress."  Supp.Add.207.  Indeed, the limited information
Defendants have disclosed thus far has only raised further questions.  For example,
Defendants told the Supreme Court in their stay application that 40 RIFs at 17
agencies were "in progress," but the District Court found that their more recent
disclosure supported a figure of 31 RIFs at 10 agencies—a "discrepancy [that] is
not insignificant."  Dkt. 8.1 at 2.  This discrepancy further underscores the need for
the administrative record to include accurate information about Defendants'
reorganization decisions.  *Id.*  That information is not available from any other
source of evidence.

Nor does Defendants' now-pending motion to dismiss render the District
Court's decision to order production an abuse of discretion.  Pet.16-17.  The
Federal Rules of Civil Procedure do not stay discovery or production of an

30

administrative record upon the filing of a motion to dismiss. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). District courts ordinarily proceed with discovery pending a motion to dismiss, *Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-CV-02220-JST, 2024 WL 4631665, at *1 (N.D. Cal. Oct. 29, 2024), and the District Court did not clearly err by doing as other courts routinely do. For this Court to issue mandamus to stay discovery pending a motion to dismiss would be an unprecedented incursion into the District Court's broad case-management authority. *Pizzuto v. Tewalt*, 136 F.4th 855, 867 (9th Cir. 2025) (recognizing district court's "wide latitude in controlling discovery").

Defendants also fail to show clear error through their argument that the District Court disregarded separation-of-powers concerns. To start, Defendants never made this argument to the District Court. Supp.Add.39-58. Mandamus cannot issue based on a supposed clear error that was never brought to the District Court's attention. *United States v. U.S. Dist. Ct.*, 384 F.3d 1202, 1205 (9th Cir. 2004). Besides, the cases that Defendants cite are nothing like the circumstances here. *Clinton v. Jones* was about the immunity of the President himself, 520 U.S. 681, 684 (1997), as was *Nixon v. Fitzgerald*, 457 U.S. 731, 733 (1982). *Cheney v. U.S. Dist. Ct.* concerned discovery requests directed to the Vice President himself and other high-level officials. 542 U.S. 367, 372-73, 385 (2004). Separation-of-powers concerns involving communications directly with the President and Vice

31

President cannot be extended to block discovery from Executive Branch agencies
generally.  That OMB is a component of the Executive Office of the President does
not support extending a constitutional privilege to OMB.  *Wolfe*, 815 F.2d at 1532-
33 & n.5.[10]  *U.S. DOGE Service v. CREW* is also inapposite. 145 S. Ct. 1981
(2025).  That Supreme Court stay decision concluded that discovery of intra-
Executive Branch recommendations was "not appropriately tailored" where those
recommendations did not bear on the question at issue of whether the entity was an
agency under FOIA.  *Id.* at 1982.  The District Court here did not clearly err in
concluding that where agencies are already acting on their approved ARRPs,
discovery of those ARRPs is appropriately tailored to the needs of the case.

As the District Court correctly concluded, this case raises issues "of
significant public importance" and "the need for accurate fact-finding overrides the
government's interests in disclosure."  Add.8.  Such balancing entails considered
judgment by the District Court that has deeply engaged with the factual record
developed thus far.  That kind of balancing decision is not susceptible to

---

[10] Courts have recognized a presidential-communications privilege for the
"President and those who assist him," *United States v. Nixon*, 418 U.S. 683, 708
(1974), but that is limited to "immediate White House advisors," *Jud. Watch, Inc.
v. DOJ*, 365 F.3d 1108, 1112 (D.C. Cir. 2004); *see also In re Sealed Case*, 121 F.3d
729, 752 (D.C. Cir. 1997).  Where that privilege undoubtedly does not apply,
invocation of separation-of-powers concerns cannot justify a broad expansion of
the qualified deliberative-process privilege.

32

mandamus, which is "reserved only for really extraordinary causes" involving a clear error as a matter of law. *In re Swift Transp. Co. Inc.*, 830 F.3d 913, 915 (9th Cir. 2016) (quoting *In re Van Dusen*, 654 F.3d 838, 840 (9th Cir. 2011)). No prior Ninth Circuit authority dictates how the District Court ought to have weighed the factors for determining if a deliberative process privilege assertion has been overcome. *Id.* at 917 (there can be no clear error if "no prior Ninth Circuit authority prohibited the course taken by the district court" (quoting *In re Morgan*, 506 F.3d at 713)). This Court should not lightly conclude that the District Court clearly erred in a way that justifies extraordinary intervention.

Finally, although the ARRPs are not privileged, and any privilege is overcome anyway, the District Court adopted an additional safeguard by entering a protective order. There can be no clear error warranting mandamus where the District Court erred on the side of caution and entered a protective order that adequately accounts for Defendants' interests. Defendants hardly even acknowledge that the District Court limited production of ARRPs to *in camera* and counsel's-eyes-only review and provided express assurance that it would not order further disclosure without notice. Add.11. The District Court's measured approach does not support "a definite and firm conviction" that the District Court erred, as required for mandamus. *In re Swift Transp.*, 830 F.3d at 916 (quoting *In re Van Dusen*, 654 F.3d at 840).

33

## II.    <u>The Motion for a Stay Should Be Denied.</u>

Defendants are unlikely to succeed on the merits of its mandamus petition

for the reasons above, which is sufficient by itself to deny the stay.  Nor do the

other stay factors justify a stay of the District Court's order.

### A.    No Irreparable Injury Requires a Stay.

Defendants claim without any valid basis that they would suffer irreparable

injury from the District Court's limited production order.

First, the asserted injury to Defendants' deliberative interests fell far short of

the required standards.  Defendants provide nothing more than a generalized claim

of a "chilling effect," Pet.21, and a conclusory assertion that disclosure would

"undermine agency operations," Pet.20 (quoting Add.185).  But one nonparty

agency made its ARRP public, Supp.Add.150, 164-171, and there is no evidence of

any harm from that disclosure.[11]  The Court previously ordered Defendants to

disclose ARRPs from four agencies to the Court and to Plaintiffs' counsel by May

19, 2025, Add.33-34, and Defendants did so, Add.28.  Defendants have identified

---

[11] After the district court order at issue here, Plaintiffs learned of another nonparty agency that has publicly disclosed its ARRP.  The Federal Mediation and Conciliation Service filed its ARRP as part of its administrative record in a case challenging that agency's dismantling.  *See* Index to the Administrative Record, *American Federation of Teachers v. Goldstein*, No. 1:25-cv-03072 (S.D.N.Y. May 27, 2025), ECF No. 63-1 (record item #2, "FMCS RIF and Restructuring Plan); FMCS ARRP, *American Federation of Teachers*, No. 1:25-cv-03072 (S.D.N.Y. May 27, 2025), ECF No. 63-2 at 10-17.  Again, there is no indication of any harm from that disclosure, which redacted only agency employee names.

no harm that has resulted in the over two months since that disclosure, and do not explain why the disclosure of additional ARRPs under the same protections would create harm where there was none before. The District Court gave Defendants multiple opportunities to present something concrete; in response, they offered only generalities and unsupported assertions.

Defendants' assertion that harm will result from disclosing documents "to litigation adversaries" is not cognizable, and definitively not so when the Court limited disclosure to attorneys'-eyes only. Pet.21. That amounts to asserting that Defendants are injured by having their own documents used against them in court—essentially, a claim that evidence is prejudicial because it is unfavorable to Defendants, and, perhaps, reveals unlawful action. That a document is adverse to a party's interest is no reason to preclude discovery; it is reason to grant it. That a party possesses within its own documents some that may harm its litigation position if revealed to adversaries is an ordinary part of litigation, an expected part of having a government that is accountable to its people through judicial review, and far from the type of harm that justifies extraordinary relief.

### B. The Public Interest Weighs Against a Stay.

The District Court found that Defendants are already and imminently taking actions to implement ARRPs and that this litigation raises issues "of significant public importance." Add.8; *see also* Supp.Add.20 n.1; *AFGE*, 139 F.4th at 1028.

Staying the District Court's order is contrary to the public interest because it will delay the resolution of this case and the remedying of ongoing harms to Plaintiffs and the public.[12]

Continuing district court developments are also relevant to the equities. The parties are engaged in a dispute in the district court about Defendants' failure to produce an administrative record by the local rule deadline, and the District Court will likely need to resolve issues about the scope of the administrative record to be produced. Allowing Defendants to continue maintaining secrecy over ARRPs, which are key to understanding the scope of the actions under challenge, will hinder the District Court's ability to manage the further factual development necessary to bring this case toward a final resolution.

## CONCLUSION

The Court should deny the stay motion and deny the mandamus petition.

---

[12] During the time since the District Court's order was administratively stayed, the National Science Foundation issued further RIF notices. As reported by Government Executive, NSF's chief management officer informed staff that "the actions were necessary to implement NSF's Agency RIF and Restructuring Plan ["(ARRP)"], which the Office of Personnel Management and Office of Management and Budget previously required of every agency." Government Executive, *NSF slashes most career executive roles after shedding one-third of staff* (July 29, 2025), https://www.govexec.com/management/2025/07/nsf-slashes-most-career-executive-roles-after-shedding-one-third-staff/407066/.

36

DATED: August 1, 2025       Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Corinne F. Johnson
Alice X. Wang
Robin S. Tholin
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151

By: */s/ Stacey M. Leyton*

*Attorneys for Plaintiff-Appellee Organizations[13]*

Elena Goldstein
Skye Perryman
Tsuki Hoshijima
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090

By: */s/ Elena Goldstein*

*Attorneys for Plaintiff-Appellee Organizations
(except NRDC) and for City of Chicago, IL;*

---

[13] Plaintiff-Appellee Organizations are the American Federation of Government Employees, AFL-CIO (AFGE); American Federation of State County and Municipal Employees, AFL-CIO; Service Employees International Union, AFL-CIO (SEIU); AFGE Local 1122; AFGE Local 1236; AFGE Local 2110; AFGE Local 3172; SEIU Local 1000; Alliance of Retired Americans; American Geophysical Union; American Public Health Association; Center for Taxpayer Rights; Coalition to Protect America's National Parks; Common Defense Civic Engagement; Main Street Alliance; Natural Resources Defense Council, Inc. (NRDC); Northeast Organic Farming Association, Inc; VoteVets Action Fund Inc.; and Western Watersheds Project.

37

*Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038
Erica J. Newland
Jacek Pruski
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel.: (202) 579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

*Attorneys for Plaintiff-Appellee Organizations (except NRDC)*

Norman L. Eisen
Spencer W. Klein
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel.: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

*Attorneys for Plaintiff-Appellee Organizations (except NRDC)*

Rushab Sanghvi
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, DC 20001
Tel.: (202) 639-6426
Sanghr@afge.org

38

*Attorney for Plaintiff-Appellee American
Federation of Government Employees, AFL-CIO
(AFGE) and AFGE locals*

Teague Paterson
Matthew Blumin
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel.: (202) 775-5900
Tpaterson@afscme.org
Mblumin@afscme.org

*Attorneys for Plaintiff-Appellee American
Federation of State County and Municipal
Employees, AFL-CIO (AFSCME)*

Steven K. Ury
SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel.: (202) 730-7428
steven.ury@seiu.org

*Attorney for Plaintiff-Appellee Service Employees
International Union, AFL-CIO (SEIU)*

David Chiu
City Attorney
Yvonne R. Meré
Chief Deputy City Attorney
Mollie M. Lee
Chief of Strategic Advocacy
Sara J. Eisenberg
Chief of Complex and Affirmative Litigation
Molly J. Alarcon
Alexander J. Holtzman

39

Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: */s/ David Chiu* _____

*Attorneys for Plaintiff-Appellee City and County of
San Francisco*

Tony LoPresti
COUNTY COUNSEL
Kavita Narayan
Meredith A. Johnson
Raphael N. Rajendra
Hannah M. Godbey
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel.: (408) 299-5900

By: */s/ Tony LoPresti* _____

*Attorneys for Plaintiff-Appellee County of Santa
Clara, Calif.*

David J. Hackett
General Counsel to King County Executive &
Special Deputy Prosecutor
Alison Holcomb
Deputy General Counsel to King County
Executive & Special Deputy Prosecutor
Erin King-Clancy
Senior Deputy Prosecuting Attorney
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION

40

401 5th Avenue, Suite 800
Seattle, WA 98104
Tel.: (206) 477-9483
David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov
aclancy@kingcounty.gov

*Attorneys for Plaintiff-Appellee Martin Luther King, Jr. County (King County)*

Sharanya Mohan
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel.: (510) 738-6788
sai@publicrightsproject.org

*Attorney for Plaintiffs-Appellees Baltimore, MD; Chicago, IL; Harris County, TX; and King County, WA*

Christian D. Menefee
Harris County Attorney
Jonathan G.C. Fombonne
Deputy County Attorney and First Assistant
Tiffany Bingham
Managing Counsel
Sarah Utley
Division Director – Environmental Division
Bethany Dwyer
Deputy Division Director – Environmental Division
R. Chan Tysor
Senior Assistant County Attorney
Alexandra "Alex" Keiser
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Tel.: (713) 274-5102
Fax: (713) 437-4211

41

jonathan.fombonne@harriscountytx.gov
tiffany.bingham@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscountytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

*Attorneys for Plaintiff-Appellee Harris County,
Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago
Stephen J. Kane
Rebecca A. Hirsch
Lucy Prather
City of Chicago Department of Law
Affirmative Litigation Division
121 N. LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel.: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

*Attorneys for Plaintiff-Appellee City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor
Sara Gross
Chief of Affirmative Litigation
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel.: (410) 396-3947
sara.gross@baltimorecity.gov

*Attorneys for Plaintiff-Appellee City of Baltimore*

42

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this response complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it is proportionally spaced and has a typeface of 14 points. It contains 8,335 words in compliance with Circuit Rules 21-2(c), 32-3(2), and 32-2(b), as a joint brief submitted by the separately represented parties of Plaintiff Organizations, the County of Santa Clara, and the City and County of San Francisco.

Dated: August 1, 2025                    */s/ Stacey M. Leyton*
                                         Stacey M. Leyton

## FILER'S ATTESTATION

Pursuant to Circuit Rule 25-5(f), the filer attests that all other signatories to this document concur in the content of, and have authorized, this filing.

Dated: August 1, 2025                    */s/ Stacey M. Leyton*
                                         Stacey M. Leyton