No. 25-4476

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

In re DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,

*Petitioners-Defendants.*

(full caption on inside cover)

————————————

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of California

————————————

## REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS
## AND EMERGENCY MOTION FOR STAY

————————————

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney General*

CRAIG H. MISSAKIAN
   *United States Attorney*

COURTNEY L. DIXON
MAXWELL A. BALDI
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7513*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

In re DONALD J. TRUMP, *in his official capacity as President of the United States, et al.,*

DONALD J. TRUMP, *in his official capacity as President of the United States*; OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; UNITED STATES DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity*; AMY GLEASON, *in her official capacity as Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETER HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, Jr., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, *in her official capacity as Attorney General of the United States*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF THE TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, *in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS, (a.k.a the Corporation for National and Community Service); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN E. KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; SOCIAL SECURITY ADMINISTRATION; FRANK BISIGNANO, *in his official capacity as Commissioner of Social Security,*
*Petitioners-Defendants,*

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
*Respondent,*

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA; CITY OF CHICAGO; COUNTY OF MARTIN LUTHER KING, JR.; COUNTY OF HARRIS; CITY OF BALTIMORE; *and* CITY AND COUNTY OF SAN FRANCISCO,
*Real Parties in Interest-Plaintiffs.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ...............................................................1

ARGUMENT ..........................................................................................2

I.   The Court should grant mandamus to prevent the district court from prematurely ordering disclosure of privileged documents. ....................................2

    A.   The Plans are clearly covered by the deliberative process privilege...........2

    B.   The district court clearly erred in concluding the privilege was overcome. ....................................................................................5

II.  The district court's recent discovery order confirms the need for mandamus. .................................................................................. 13

III. This Court should grant a stay pending review of the petition. ......................... 16

CONCLUSION .................................................................................. 16

CERTIFICATE OF COMPLIANCE

FURTHER ADDENDUM

## INTRODUCTION AND SUMMARY

Following the Supreme Court's near-unanimous stay of the district court's preliminary injunction, this case returned to district court and has become a fishing expedition in search of a viable legal theory. Plaintiffs' defense of the district court's production order rests on claims they have not raised. They brought a facial challenge to an Executive Order and to the Memorandum issued by OMB and OPM—a challenge the Supreme Court concluded is likely to fail, *see Trump v. AFGE*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025), and as to which the requested agency plans are irrelevant, regardless. Now plaintiffs claim that they are bringing a different APA challenge, though to what is not entirely clear.

If plaintiffs seek to challenge agency Plans to conduct RIFs or reorganizations (or some purported approval of those Plans), they have failed to identify a final agency action; the final agency action would be the implemented RIF or reorganization, not the mere plan to do so, whether "approved" or not. If plaintiffs seek to challenge agencies' actual RIFs or reorganizations, they have failed to identify the precise actions; any interim planning documents in support of those actions would not be record evidence in an APA challenge to them; and in all events, any dispute about whether the plans are properly part of the record would need to be determined after an administrative record is prepared. All told, the district court inverted the burden for justifying extra-record review in an APA case and, far from turning to

discovery against Executive Branch agencies as a last resort, the district court has authorized discovery as its first option.

Compounding its error, after this Court granted an administrative stay of the first production order, the district court incorporated by reference the same faulty analysis in a new order that rejects the government's arguments for protecting an even broader swath of materials. This expansion of the district court's error confirms the need for extraordinary relief.

The district court has made clear that it will allow plaintiffs to hop from theory to theory to justify an ever-broadening set of discovery requests, while sidestepping the deliberative process privilege and ordinary rules governing APA litigation. This Court should issue a writ of mandamus to correct that clear abuse of authority.

## ARGUMENT

I. **The Court should grant mandamus to prevent the district court from prematurely ordering disclosure of privileged documents.**

A. **The Plans are clearly covered by the deliberative process privilege.**

The district court assumed that the Plans may contain material covered by the deliberative process privilege. Add.7. As the government's petition established, that assumption was plainly warranted: the Plans were prepared to assist agency decisionmakers in helping to plan and prepare for implementing RIFs; they do not embody any final decisions to implement RIFs or reorganizations; and the Plans contain information about agencies' strategies and potential future actions. Pet.11-12.

2

Plaintiffs' contrary arguments fundamentally misunderstand the deliberative-process privilege and the nature of the Plans.

Plaintiffs insist that a Plan cannot be predecisional if it has been approved by OPM and OMB. Answer.22-23. But regardless of whether OPM or OMB opines on a Plan, the final decision an agency will reach is whether or not to conduct a RIF or otherwise to reorganize itself; that authority rests with the employing agency and the Plans do not irrevocably commit any agency to take any specific step. Add.185. OPM and OMB's expression of approval for an agency's future plan would not transform it into a final decision. If an Executive Order directed agencies to prepare plans to issue certain interim final rules addressing certain policy priorities, and to submit those plans to OMB to ensure they are consistent with the President's policy priorities, those plans would plainly be predecisional—even if OMB approved some or all of an agency's plan, and even if the agency subsequently finalized the rules that its plan contemplated. The same is true here.

Plaintiffs' assertion that some agencies have begun implementing RIFs (Answer.22-23) therefore does not help them. Even if an agency is undertaking a specific RIF or reorganization, that final action may not necessarily reflect what was in an agency's Plan; circumstances may have changed informing the agency's ultimate final action that the Plan did not contemplate. And regardless, a plan to undertake a particular course of action does not cease to be predecisional simply because an agency ultimately takes a final action contemplated by that plan. The question is

whether the document was generated "to assist an agency decisionmaker in arriving at his decision," *Common Cause v. IRS*, 646 F.2d 656, 659 (D.C. Cir. 1981), not whether a decision was subsequently made. Plaintiffs' assertion that the Plans must be final because the government complied with the district court's preliminary injunction (Answer.23-24) is nonsensical. The district court enjoined agencies from "taking any action to implement" the Executive Order or the Memorandum on the theory that those documents unlawfully directed agencies to undertake RIFs contrary to law. Supp. Add. 107-08. And the district court made clear that it interpreted the injunction broadly. *See* Dkt.162 at 1-2. The government complied with that injunction by halting RIFs that were in progress at the time; plaintiffs' assertion that the *Plans* must have "commit[ted]" the agencies to take particular RIFs is a non sequitur. Answer.24.

The plans are also deliberative. "A predecisional document is a part of the deliberative process[s] if the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002) (cleaned up). A planning document representing a tentative conclusion about how an agency will act fits squarely within that definition. *See, e.g.*, *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988) (documents that "reveal the issues that the [agency] considers important and provide telling clues as to the [agency's] proposed course of action in addressing the conflicting demands on … resources" are deliberative);

*Common Cause*, 646 F.2d at 659 (memoranda discussing rejected agency plan are deliberative). Plaintiffs repeat their assertion that an agency plan that has been internally approved by other components of the Executive Branch cannot be deliberative (Answer.27) but that is incorrect for the reasons already explained.

### B. The district court clearly erred in concluding the privilege was overcome.

Plaintiffs likewise do not rebut the government's showing that the district court clearly erred in concluding that the privilege could be overcome. The Plans are not relevant to any viable claim plaintiffs could assert. Pet.13-14.

Plaintiffs make much of the Supreme Court's statement that the Plans "[were] not before" it when it stayed the district court's preliminary injunction. *Trump v. AFGE*, 2025 WL 1873449, at *1. True, the Supreme Court had no opportunity to conduct "any assessment of the plans themselves." *Id.* But it does not follow that the Court was suggesting that challenges to the Plans are properly before the district court. For that to be the case, plaintiffs would have had to plead a viable APA claim for which the Plans would be relevant and discoverable at this time. They did not.

In fact, it is not at all clear from plaintiffs' answer what sort of APA claim related to the Plans plaintiffs think they have raised. In ordering disclosure, the district court understood the Plans to be relevant to "Claim VII" in plaintiffs' complaint. Add.5. That claim asserts that federal agencies' "implementation of [Plan]s by RIFing federal employees, closing offices, functions, and programs, and

otherwise reorganizing agency functions are all final agency action," and that such steps are "arbitrary and capricious" for a number of cursorily stated reasons—most of which explicitly reflect plaintiffs' underlying legal theory that it is unlawful for agencies to undertake action at "the President's direction" in the Executive Order and pursuant to the Memorandum. Add.149. But the Supreme Court has already recognized that legal theory is likely to fail, and regardless, the contents of any particular Plan are immaterial to whether the Executive Order (or the Memorandum) are facially unlawful.

Even if Claim VII could be read to challenge agency action distinct from plaintiffs' facial objections to the Executive Order and Memorandum, it still would not support the production order. Plaintiffs' own allegations in Count VII underscore the government's point in its mandamus petition: the only "final" agency actions that could possibly provide a basis for an APA claim would be agencies' actual discrete actions to eliminate positions, close offices, or otherwise reorganize agency functions. Add.149. Plaintiffs' complaint, however, does not challenge any such discrete action by any particular federal agency. *See* Add.149. And even setting that aside, any APA claim challenging such an action would have to proceed on an administrative record, of which the deliberative Plans would not be a part. Pet.15-16. Plaintiffs parrot the district court's conclusion that it "*may*" be possible that the Plans could be considered "as extra-record evidence," Answer.19, but they entirely ignore that they invert the

burden for justifying discovery in an APA case. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014).

Plaintiffs' alternative suggestions for why the Plans are necessary for their claims fare no better. Plaintiffs insist that the Plans may be properly disclosed because plaintiffs challenge OPM and OMB's purported "approval" of the Plans. Answer.17-18. But to the extent the complaint alleges that OPM's and OMB's "approval" of Plans is unlawful, plaintiffs' allegations all appear to relate to plaintiffs' theory about the facial illegality of the Executive Order and Memorandum, on which the contents of the Plans have no bearing. *E.g.*, Add.142 (alleging that OMB and OPM have "usurp[ed] the authority delegated" to agencies by requiring agencies to submit Plans to OPM and OMB and include "large-scale RIFs"); Add.146 (alleging that OPM and OMB have acted arbitrarily and capriciously by requiring agencies to "cede decision-making authority … regardless of the requirements of any applicable statute or regulation," and by "categorically impos[ing] requirements to RIF employees at the President's direction … regardless of statute or regulation."). Indeed, apart from their facial challenge to the Executive Order and Memorandum, it is not clear what plaintiffs' complaint *could* plausibly allege is unlawful about OPM and OMB's approval of a particular Plan, given that plaintiffs filed this complaint before seeing any particular Plan. If plaintiffs intend to argue that any "approval" of a Plan is unlawful because the Plan contemplates future unlawful action, they at most can challenge the actual final action if and when it occurs, not the Plans. And if plaintiffs

7

intend to argue that the mere fact of OPM and OMB approval makes the Plans unlawful, that argument runs squarely into the Supreme Court's stay order and the contents of the Plans have no bearing on such a claim, as explained.

In any event, plaintiffs have no viable APA claim as to the "approval" of Plans. The Plans are—by their nature—not final agency actions subject to challenge under the APA. A general programmatic document is not subject to APA review. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 893 (1990). That does not change even if the Plans have been "approved" by OPM and OMB during a process of inter-agency consultation. This Court's decision in *Center for Biological Diversity v. Haaland*, 58 F.4th 412 (9th Cir. 2023), is instructive. There, the Court held that a "recovery pla[n]" that an agency was required to develop pursuant to the Endangered Species Act was not final agency action. *Id.* at 417-18. Although the agency was required to develop the plan by statute—and the plan underwent notice and comment—the Court compared the plan to a "map or a set of directions that provides objective and measurable steps" the agency intends to undertake. *Id.* (cleaned up). Although that map "may well help the agency chart [its] course," this Court recognized that "adopting the map is not an agency action by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 418 (cleaned up).

The same is true of the Plans, whether or not "approved" by OPM and OMB. The Executive Order directed agencies to prepare Plans to achieve the President's policy priorities and to submit those Plans to OMB and OPM, but the Plans

developed pursuant to this process remain just that: a Plan—a "roadmap" for the agency that is subject to change and does not "bind anyone to anything." *Center for Biological Diversity*, 58 F.4th at 419. Indeed, some agencies prepared for RIFs, but "are now planning to reassess their workforce needs following intervening events—deferred resignations, natural attrition, and other voluntary separations." Dkt.208-1 at 4; *see also id.* ("[S]everal agencies are now not planning to proceed with several of the RIFs that had been planned at other times.").[1] Similar to the point discussed above, if an Executive Order directed agencies to prepare plans to issue certain interim final rules, an agency plan developed pursuant to that Executive Order would plainly not be final agency action—even if the plan were submitted and approved by OMB in a process of inter-agency consultation, and even if the agency subsequently published some or all of the interim final rules the plan contemplated. Only the resulting final rules published in the Federal Register would be final—not the deliberative and predecisional plans. Nor would those plans ordinarily be part of the administrative record in any subsequent APA challenge to the agency's final decision. *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024).

---

[1] In denying a stay of the preliminary injunction, a panel of this Court rejected the government's argument that the Memorandum issued by OMB and OPM and any approvals of Plans were not final agency action. *See AFGE v. Trump*, 139 F.4th 1020, 1039 (9th Cir. 2025). That decision did not address whether any other agency action was final, *see id.*, there is additional information about the Plans now in the record, *e.g.,* Dkt.208-1, and, in any event, that panel's analysis is not binding on future panels. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 n.4 (9th Cir. 2021).

Plaintiffs' assertion (Answer.16-17) that they have pleaded a viable *ultra vires* claim is even further from the mark. Other than their legally flawed challenge to the Executive Order and Memorandum, plaintiffs never articulate what an *ultra vires* claim would look like. And for good reason. *Ultra vires* review "does not apply simply because an agency has arguably reached a conclusion which does not comport with the law. Rather, it applies only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *NRC v. Texas*, 605 U.S. 665, 681 (2025) (citations omitted); *see also id.* at 682 (an *ultra vires* challenge is "essentially a Hail Mary pass" that "rarely succeeds"). Because plaintiffs point to no such specific prohibition, they have not come close to bringing a colorable *ultra vires* claim.

At bottom, plaintiffs' shifting legal theories underscore that the district court has authorized a fishing expedition of the worst kind: rather than pleading a viable legal theory and seeking discovery to support it, plaintiffs are seeking discovery in hopes of piecing together a viable legal claim. Although such roving discovery would be improper in any litigation, it is particularly inappropriate here given the nature of the documents at issue. Pet.17-20. Discovery against the Executive Branch is an extraordinary step, not to be taken lightly. *See, e.g.*, *U.S. DOGE Service v. Center for Responsibility & Ethics in Wash.*, 145 S. Ct. 1981, 1982 (2025) (summarily vacating denial of mandamus petition because court of appeals gave insufficient consideration to the "separation of powers concerns [that] counsel judicial deference and restraint in the

10

context of discovery regarding internal Executive Branch communications"); *In re United States*, 583 U.S. 29, 32 (2017) (per curiam) (vacating and remanding to the district court with instructions to rule on the government's threshold arguments regarding jurisdiction and reviewability under the APA, which "likely would eliminate the need for the District Court to examine a complete administrative record."). It certainly should not be ordered when the government has a motion to dismiss pending that could obviate the need to conduct any discovery. *See* Dkt.216. The district court paid no heed to these principles in ordering the production of deliberative documents prepared at the behest of the President and in order to be shared with OMB, a component of the Executive Office of the President. Add.159.

Plaintiffs try to distinguish (Answer.31-33) the many cases where the Supreme Court has rejected the same blasé approach to Executive Branch discovery the district court is displaying here. But whether or not this order is quite as egregious as other orders, it shares the fundamental flaw that warranted mandamus relief: discovery into agency decision-making cannot be ordered without, at the very least, first considering alternatives, which the district court here plainly did not do. Pet.19-20.

Nor is such extraordinary discovery warranted to ensure "accurate fact-finding." D.Ct.Resp.2. In responding to this petition, the district court contended that "any deliberative process privileg[e]" is overcome because of a factual "discrepancy" in the government's stay application to the Supreme Court. *Id.* That contention misses the mark. In seeking a stay of the preliminary injunction in the

11

Supreme Court, the government referred to an estimate by OPM that "about 40 RIFs in 17 agencies were in progress and are currently enjoined." Application to Stay Order 32-33, *Trump v. AFGE*, No. 24A1174 (U.S. June 2, 2025). As an OPM official explained to the district court, OPM derived those numbers from its approval of requests for competitive-area waivers and requests to shorten the RIF notice period, *see* 5 C.F.R. §§ 351.402(c), 351.801(b). Dkt.224-1 at 2. OPM chose this measure as the "best available means of estimating how many RIFs were in progress across the Federal government connected in some way with Executive Order 14210 and thus were subject to the Court's injunction." *Id.* The district court emphasized that this data was over-inclusive in some ways (including that it inadvertently included certain non-enjoined agencies). D.Ct.Resp.2. But the district court failed to mention that, as the government explained below, the data was also under-inclusive in other ways, including that it used a narrow date range (the number of competitive area waivers that OPM approved between March 10, 2025 and April 13, 2025) and understated the number of competitive area waivers approved by OPM as to the agency defendants prior to the district court's entry of a temporary restraining order. Dkt.224-1 at 2-3; Dkt.208-1 at 3-4. The government's representation was expressly couched as an estimate. As OPM has since explained, this estimate almost certainly understated the harm to the Government both because it omitted competitive area and notice period waivers approved before March 10 or after April 13, and because, during the approximately two months the TRO and preliminary injunction were in place,

agencies may have been planning to submit requests for competitive area waivers, but abstained from doing so because they were enjoined. *See* Dkt.224-1 at 3.

The district court's view of what would have been a better estimate of the number of RIFs in progress at the time (31 rather than 40) is ultimately immaterial. That does not undermine the government's prior assertion of irreparable harm, and does not remotely provide a basis to broadly order the disclosure of the predecisional and deliberative Plans at this juncture.

## II.    The district court's recent discovery order confirms the need for mandamus.

1. Plaintiffs have charged ahead with their quest for discovery beyond any potential administrative record.  Plaintiffs demanded:

> All COMMUNICATIONS between any Federal Agency Defendant and OMB, OPM, or DOGE discussing any [Plan] (in whole or any part), including but not limited to any approvals or disapprovals of those Plans (in whole or any part, formally or informally) and any discussion of whether the contents of those Plans meets or do not meet expectations, communicated by OMB, OPM, or DOGE to any Federal Agency Defendant, from February 26, 2025 to the present.

Further.Add.1-2.  And on July 25, the district court denied the government's motion to block production of those documents.[2]  Further.Add.1-5.

---

[2] Plaintiffs also demanded agency requests for waivers of RIF notice periods and any OMB or OPM responses to those requests.  Further.Add.2.  While these requests are also premature, the government does not anticipate that disclosure of these waiver requests and decisions will implicate significant privilege concerns.

Notably, the district court entered that order based entirely on its reasoning in ordering production of the agency plans at issue here. *See* Further.Add.2-3 (incorporating rationale from July 18 Order and "for the same reasons stated in that Order," holding that the information sought "is relevant to claims in this case and, even assuming that the deliberative process privilege applies, that privilege is overridden"). The court's subsequent order underscores that the court is poised to broadly authorize disclosure of agency records in this case without any heed for the deliberative-process privilege, and that it is proceeding at breakneck speed, insisting that discovery proceed before resolving dispositive motions because "[t]he Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending," Further.Add.4. This reasoning, once more, gives no weight to the separation-of-powers implications and ignores that the court is presiding over a purported APA case.

To the extent the district court has foreclosed the government's ability to invoke the deliberative-process privilege over these materials, its order flouts circuit precedent. *See Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) (per curiam). In *Karnoski*, this Court issued a writ of mandamus vacating discovery orders because the district court did not perform a sufficiently "granular" balancing analysis before holding that the plaintiffs in that case had overcome the deliberative process privilege. 926 F.3d at 1206 ("The district court appears to have conducted a single deliberative process privilege analysis covering all withheld documents, rather than considering

14

whether the analysis should apply differently to certain categories.").  Here, the district court committed the exact same error, incorporating its previous erroneous analysis as to a different subset of documents to categorically address privilege claims even though the records at issue—interagency communications discussing planning documents—are definitionally predecisional and deliberative.  The district court, thus, had no basis to conclude that the privilege was overcome.

Because the district court has relied on the reasoning of its July 18 order to bless discovery into a larger set of the same type of documents it previously compelled production of, the need for mandamus relief against the July 18 order is acute.  And in granting such relief, this Court should take the opportunity to make clear that the district court is not free to authorize a fishing expedition for other deliberative agency records besides the agency plans.  The writ of mandamus should not only compel the district court to vacate its July 18 production order but also prohibit the district court from compelling additional discovery without first adjudicating the pending dispositive motion, determining that there is a viable claim as to which the discovery is relevant, and establishing that plaintiffs have met their burden to justify expanding the administrative record for any such claim.[3]

---

[3] If necessary, this Court may construe this reply as a petition for writ of mandamus or prohibition to establish jurisdiction over the district court's denial of the government's motion to quash.  *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir. 2003) (en banc); *In re: GTE Service Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985).  Alternatively, if the Court so directs, the government is prepared to file a *pro forma*

*Continued on next page.*

## III.    This Court should grant a stay pending review of the petition.

This Court should also stay the district court's order pending its consideration of this petition.  A stay of disclosure obligations is commonly granted pending disposition of a writ of mandamus.  *See, e.g.*, Order, *In re United States of America*, No. 17-72917 (Oct. 24, 2017) (staying discovery and record supplementation); *Barton v. U.S. Dist. Court*, 410 F.3d 1104, 1106 (9th Cir. 2005).  The reason for that is clear. The harms from disclosure are irreversible, and the stakes here warrant interim relief.

## CONCLUSION

For the foregoing reasons, this Court should grant a stay pending resolution of the petition for mandamus.  Additionally, this Court should issue a writ compelling the district court to vacate its July 18 production order and prohibiting the district court from likewise prematurely compelling any additional discovery.

If this Court denies the stay motion or petition, it should extend the administrative stay it previously entered for seven days to allow the Solicitor General to seek relief from the Supreme Court.

---

supplemental petition to avoid any doubt that this court may properly exercise All Writs Act jurisdiction over the denial of the motion to quash.  The government would consent to plaintiffs' filing a sur-reply to address the arguments raised in Section II of this reply.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

CRAIG H. MISSAKIAN
  *United States Attorney*


COURTNEY L. DIXON

 */s/ Maxwell A. Baldi*
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

August 2025

## CERTIFICATE OF COMPLIANCE

This reply complies with applicable type-volume limits because it contains 4,185 words. *See* Fed. R. Civ. P. 21(d)(2); Cir. R. 32-2. This reply complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ Maxwell A. Baldi
Maxwell A. Baldi

**FURTHER ADDENDUM**

## TABLE OF CONTENTS

Order Denying Defendants' Motion to Quash and for Protective Order,
 Dkt. 228 (July 25, 2025)........................................................ Further.Add.1

Declaration of Barbara J. Chisholm, Dkt. 178-1 (July 11, 2025) .............. Further.Add.6

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Case No. 25-cv-03698-SI<br><br>**ORDER DENYING PLAINTIFFS' REQUEST FOR ORDER SHORTENING TIME AND DENYING DEFENDANTS' MOTION TO QUASH AND FOR PROTECTIVE ORDER**<br><br>Re: Dkt. Nos. 178, 210 |

Now pending before the Court are plaintiffs' motion for an order shortening time for defendants to respond to plaintiff's Request for Production (RFP) No. 1 and defendants' motion for a protective order and order quashing plaintiffs' first set of RFPs, which includes RFP No. 1. Dkt. Nos. 178, 210. The parties have briefed the matters on a shortened schedule, including opposition briefs and replies. *See* Dkt. Nos. 207, 211, 218, 219, 222. Neither party noticed their motion for a hearing and the Court finds a hearing is not needed. *See* Civ. L.R. 7-1(b).

## BACKGROUND

The Court does not recite in full the factual and procedural background of this case. Of immediate relevance here, on July 11, 2025, the parties conferred pursuant to Federal Rule of Civil Procedure 26(f). On that date, plaintiffs served discovery requests as follows:

> **REQUEST FOR PRODUCTION NO. 1:**
> All COMMUNICATIONS between any Federal Agency Defendant and OMB, OPM, or DOGE discussing any Agency RIF and Reorganization Plan ("ARRP") (in whole or any part), including but not limited to any approvals or disapprovals of those Plans (in whole or any part, formally or informally) and any discussion of whether the contents of those Plans meets or do not meet expectations,

**Further.Add.1**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

communicated by OMB, OPM, or DOGE to any Federal Agency Defendant, from February 26, 2025 to the present.

**REQUEST FOR PRODUCTION NO. 2:**
To the extent not previously produced by Defendants in this litigation pursuant to court order, all Federal Agency Defendant applications for waivers of statutorily-mandated RIF notice periods.

**REQUEST FOR PRODUCTION NO. 3:**
To the extent not previously produced by Defendants in this litigation pursuant to court order, all responses by OMB or OPM to any Federal Agency Defendant's request for waivers of statutorily-mandated RIF notice periods.

Dkt. No. 178-1, Chisolm Decl., Ex. A at 8.[1]  Plaintiffs now move for an order shortening time for defendants' response to RFP No. 1, asking that defendants have fewer than the usual 30 days and that they be ordered to respond by July 28, 2025.  Meanwhile, on July 15, 2025, defendants filed a motion to quash or for a protective order, asking that the Court "reliev[e] Defendants of any obligation to respond to the RFPs" at all.  Dkt. No. 210 at 1.


**DISCUSSION**

The Court denies plaintiffs' request for an order shortening time to respond to RFP No. 1. Although plaintiffs urge that the exigent nature of this case warrants an expedited discovery response, the Court questions whether it would be fruitful to order an expedited response in a case of this size and involving so many federal agency defendants.  A proper response to the discovery request will undoubtedly take more than a few days.  The Court declines to alter the current discovery response deadline of August 11, 2025.

However, the Court agrees with plaintiffs that the information sought in the RFPs is relevant and should be produced.  The Court refers to and incorporates its reasoning from its recent Order that defendants shall produce their Agency RIF and Reorganization Plans (ARRPs).[2]  *See* Dkt. No. 214.[3]  For the same reasons stated in that Order, the Court finds that the information sought by

---

[1] In the absence of page numbers on the document itself, the Court will cite to page numbers according to the ECF-stamped number at the top righthand corner of the page.

[2] A "RIF" is a reduction in force.

[3] Defendants have filed a writ of mandamus seeking Ninth Circuit review of the discovery Order at Dkt. No. 214.  *See Trump v. United States Dist. Ct. for the N. Dist. of Cal.*, No. 25-4476

2

1      plaintiffs' RFP Nos. 1, 2, and 3 is relevant to claims in this case and, even assuming that the

2      deliberative process privilege applies, that privilege is overridden.

3      In addition to the reasons given in its prior Order at Dkt. No. 214, the Court emphasizes

4      several new points. First, in response to the prior Order, defendants have now produced the list of

5      the RIFs that they represented to the Supreme Court were in progress and were halted by this Court's

6      preliminary injunction. *See id.* at 9-10 (ordering production); Dkt. No. 224 (RIF list). In defendants'

7      application for a stay from the Supreme Court, the U.S. Solicitor General represented that "about

8      40 RIFs in 17 agencies were in progress and are currently enjoined." Application for Stay at 32-33,

9      *Trump v. Am. Fed. of Gov't Emps., AFL-CIO*, No. 24A1174 (U.S. June 2, 2025). Now that

10     defendants have filed their RIF list, Dkt. No. 224, it is apparent that the figure presented to the

11     Supreme Court included numerous agencies that are not defendants in this case and therefore were

12     not enjoined by this Court.[4] Specifically, the list of "40 RIFs in 17 agencies" included the following

13     non-defendant agencies:

14      -Federal Mediation and Conciliation Service (2 RIFs)

15      -US Agency for Global Media (2 RIFs)

16      -Institute of Museum and Library Services (1 RIF)

17      -National Archives and Records Administration (1 RIF)

18      -National Endowment for Humanities (1 RIF)

19      -US African Development Foundation (1 RIF)

20      -Wilson Center (1 RIF)

21     Dkt. No. 224-1, Attach. to Peters Decl. Based on this list, defendants' application to the Supreme

22     Court should have stated that the injunction paused **31 RIFs in 10 agencies**, not 40 RIFs in 17

23     agencies. This discrepancy is not insignificant. It further underscores the Court's previous finding

24     that any deliberative process privilege, if it exists at all, is overridden by "the need for accurate fact-

25

26     _____

27     (9th Cir. July 21, 2025). That writ is currently pending, though the Ninth Circuit has granted
defendants an immediate administrative stay of the production deadline. *See id.*, Dkt No. 5.

28      [4] Defendants now say that this count was both an underestimate and an overestimate in
various ways.

United States District Court
Northern District of California

**Further.Add.3**

United States District Court
Northern District of California

1    finding in this litigation . . . .” Dkt. No. 214 at 7-8. Plaintiffs are entitled to discovery relevant to

2    their claims rather than simply taking defendants’ word for it.

3         Second, defendants’ papers on the discovery dispute continue to take the position that the

4    Supreme Court’s July 8, 2025 order staying the preliminary injunction “effectively ends this case[.]”

5    *See* Dkt. No. 214 at 4 (citing Dkt. No. 208 at 1). As explained, Dkt. No. 214 at 4, this Court disagrees

6    with defendants’ reading. In addition to the prior explanation, plaintiffs have cogently laid out why

7    their *ultra vires* claims, and not only their Administrative Procedure Act claims, remain live

8    following the Supreme Court’s stay order. *See* Dkt. No. 218 at 7-8 & n.6. For instance, setting

9    aside any facial challenges to the lawfulness of the Executive Order and OMB/OPM Memorandum

10   themselves, plaintiffs have alleged that OMB, OPM, and DOGE have acted *ultra vires* in “approving

11   or disapproving ARRPs and ordering specific staffing and spending cuts.” *Id.* at 7. The Court

12   agrees with plaintiffs that the Supreme Court’s stay order does not “address the legality or scope of

13   authority for OMB, OPM, and DOGE’s decisions and directives with respect to implementing

14   workforce reduction or reorganization at any agency.”[5] *See id.*

15        Finally, the Court rejects defendants’ contention that discovery should be put on hold until

16   after resolution of its recently filed motion to dismiss. *See* Dkt. No. 216. The parties held their Rule

17   26(f) conference on July 11 and discovery is now open. *See* Fed. R. Civ. P. 26(d)(1). “The Federal

18   Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a

19   potentially dispositive motion is pending.” *In re Nexus 6p Products Liab. Litig.*, No. 17-cv-2185-

20   BLF, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017) (quoting *Tradebay, LLC v. eBay, Inc.*,

21   278 F.R.D. 597, 600 (D. Nev. 2011)). Nor does the Court have before it a formal motion to stay

22   discovery. In any event, “district courts look unfavorably upon such blanket stays of discovery.”

23   *Cain v. JPay, Inc.*, No. 21-cv-7401-FLA (AGRx), 2022 WL 1840342, at *1 (C.D. Cal. Apr. 4, 2022)

24

25       [5] Some of the parties’ discovery dispute centers around the discovery plaintiffs seek with
respect to “DOGE,” which defendants state is an “umbrella term for a government-wide *initiative*

26   that includes . . . DOGE teams within federal agencies—teams comprised of *agency employees* who
report to agency leadership.” *See* Dkt. No. 210 at 1-2. In response, plaintiffs clarify that their

27   discovery request “does not encompass communications within agencies (i.e., between members of
DOGE who are embedded at Federal Agency Defendants and other employees of the same agency).”

28   Dkt. No. 218 at 14. The Court therefore finds defendants’ concerns regarding the definition of
“DOGE” in plaintiffs’ RFPs does not supply a reason to decline to produce documents.

4

Further.Add.4

(citation omitted). Much of what defendants argue puts the cart before the horse. They essentially urge that plaintiffs cannot obtain the discovery they seek because plaintiffs have not yet proven their case. What plaintiffs seek to prove their case is solely within defendants' possession, and yet defendants seek to keep this information secret.

The parties may jointly request from the Court an appropriate protective order regarding the discovery that defendants produce. To the extent defendants' motion seeks a blanket protective order that documents responsive to RFPs Nos. 1, 2, and 3 need not be produced at all, that request is denied.

### CONCLUSION

For the reasons stated above, the Court denies defendants' motion for a protective order or to quash plaintiffs' RFP Nos. 1, 2, and 3. The Court also denies plaintiffs' motion for an order shortening the time for defendants to respond to RFP No. 1. Defendants shall produce the requested discovery on the ordinary timetable, i.e., by August 11, 2025. To the extent defendants withhold relevant documents that they assert are privileged, defendants shall provide plaintiffs with a privilege log for any specific assertions.

**IT IS SO ORDERED**.

Dated: July 25, 2025

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California