**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 19 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO;
AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOYEES,
AFL-CIO; SERVICE EMPLOYEES
INTERNATIONAL UNION; AMERICAN
FEDERATION OF GOVERNMENT
EMPLOYEES - LOCAL 1122;
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES - LOCAL
1236; AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES - LOCAL
2110; AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES - LOCAL
3172; SERVICE EMPLOYEES
INTERNATIONAL UNION - LOCAL
1000; ALLIANCE FOR RETIRED
AMERICANS; AMERICAN
GEOPHYSICAL UNION; AMERICAN
PUBLIC HEALTH ASSOCIATION;
CENTER FOR TAXPAYER RIGHTS;
COALITION TO PROTECT AMERICA'S
NATIONAL PARKS; COMMON
DEFENSE CIVIC ENGAGEMENT; MAIN
STREET ALLIANCE; NATURAL
RESOURCES DEFENSE COUNCIL, INC.;
NORTHEAST ORGANIC FARMING
ASSOCIATION, INC.; VOTEVETS
ACTION FUND, INC.; WESTERN
WATERSHEDS PROJECT; COUNTY OF
SANTA CLARA; CITY OF CHICAGO;
COUNTY OF MARTIN LUTHER KING,

No. 25-3293

D.C. No. 3:25-cv-03698-SI
Northern District of California,
San Francisco

ORDER

JR.,; COUNTY OF HARRIS; CITY OF
BALTIMORE; CITY AND COUNTY OF
SAN FRANCISCO,

Plaintiffs - Appellees,

v.

DONALD J. TRUMP, in his official
capacity as President of the United States;
UNITED STATES OFFICE OF
MANAGEMENT AND BUDGET;
RUSSELL VOUGHT, in his official
capacity as Director of U.S. Office of
Management and Budget; UNITED
STATES OFFICE OF PERSONNEL
MANAGEMENT; CHARLES EZELL, in
his official capacity as Acting Director of
the U.S. Office of Personnel Management;
UNITED STATES DEPARTMENT OF
GOVERNMENT EFFICIENCY; ELON
MUSK, in his official capacity as the actual
head of the Department of Government
Efficiency; AMY GLEASON, in her official
capacity as the titular Acting Administrator
of the Department of Government
Efficiency; UNITED STATES
DEPARTMENT OF AGRICULTURE;
BROOKE ROLLINS, in her official
capacity as Secretary of the U.S.
Department of Agriculture; UNITED
STATES DEPARTMENT OF
COMMERCE; HOWARD LUTNICK, in
his official capacity as Secretary of the U.S.
Department of Commerce; UNITED
STATES DEPARTMENT OF DEFENSE;
PETER HEGSETH, in his official capacity
as Secretary of the U.S. Department of
Defense; UNITED STATES
DEPARTMENT OF ENERGY; CHRIS

WRIGHT, in his official capacity as
Secretary of the U.S. Department of Energy;
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
ROBERT F. KENNEDY, Jr., in his official
capacity as Secretary of the U.S.
Department of Health and Human Services;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; KRISTI
NOEM, in her official capacity as Secretary
of the U.S. Department of Homeland
Security; UNITED STATES
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT; SCOTT
TURNER, in his official capacity as
Secretary of the U.S. Department of
Housing and Urban Development; DOJ -
UNITED STATES DEPARTMENT OF
JUSTICE; PAMELA BONDI, Attorney
General, in her official capacity as Attorney
General of the U.S. Department of Justice;
UNITED STATES DEPARTMENT OF
THE INTERIOR; DOUG BURGUM, in his
official capacity as Secretary of the U.S.
Department of the Interior; UNITED
STATES DEPARTMENT OF LABOR;
LORI CHAVEZ-DEREMER, in her official
capacity as Secretary of the U.S.
Department of Labor; UNITED STATES
DEPARTMENT OF STATE; MARCO
RUBIO, in his official capacity as Secretary
of the U.S. Department of State; UNITED
STATES DEPARTMENT OF THE
TREASURY; SCOTT BESSENT, in his
official capacity as Secretary of U.S.
Department of Treasury; UNITED STATES
DEPARTMENT OF TRANSPORTATION;
SEAN DUFFY, in his official capacity as
Secretary for the U.S. Department of
Transportation; UNITED STATES

25-4476

DEPARTMENT OF VETERANS
AFFAIRS; DOUG COLLINS, in his official
capacity as Secretary of Veterans Affairs;
AMERICORPS; JENNIFER BASTRESS
TAHMASEBI, in her official capacity as
Interim Agency Head of AmeriCorps;
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; LEE ZELDIN,
in his official capacity as Administrator of
U.S. Environmental Protection Agency;
UNITED STATES GENERAL SERVICES
ADMINISTRATION; STEPHEN
EHIKIAN, in his official capacity as Acting
Administrator for U.S. General Services
Administration; NATIONAL LABOR
RELATIONS BOARD; MARVIN E.
KAPLAN, in his official capacity as
Chairman of the National Labor Relations
Board; WILLIAM COWEN, in his official
capacity as the Acting General Counsel of
the National Labor Relations Board;
NATIONAL SCIENCE FOUNDATION;
BRIAN STONE, in his official capacity as
Acting Director of the National Science
Foundation; UNITED STATES SMALL
BUSINESS ADMINISTRATION; KELLY
LOEFFLER, in her official capacity as
Administrator of the U.S. Small Business
Administration; SOCIAL SECURITY
ADMINISTRATION; FRANK
BISIGNANO, Commissioner of Social
Security, in his official capacity as
Commissioner of the U.S. Social Security
Administration,

Defendants - Appellants.

4

IN Re DONALD J. TRUMP

_____

DONALD J. TRUMP; UNITED STATES
OFFICE OF MANAGEMENT AND
BUDGET; RUSSELL VOUGHT; UNITED
STATES OFFICE OF PERSONNEL
MANAGEMENT; CHARLES EZELL;
UNITED STATES DEPARTMENT OF
GOVERNMENT EFFICIENCY; ELON
MUSK; AMY GLEASON; UNITED
STATES DEPARTMENT OF
AGRICULTURE; BROOKE ROLLINS;
UNITED STATES DEPARTMENT OF
COMMERCE; HOWARD LUTNICK;
UNITED STATES DEPARTMENT OF
DEFENSE; PETER HEGSETH; UNITED
STATES DEPARTMENT OF ENERGY;
CHRIS WRIGHT; UNITED STATES
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; ROBERT F.
KENNEDY, Jr.; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM; UNITED
STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT; SCOTT
TURNER; DOJ - UNITED STATES
DEPARTMENT OF JUSTICE; PAMELA
BONDI, Attorney General; UNITED
STATES DEPARTMENT OF THE
INTERIOR; DOUG BURGUM; UNITED
STATES DEPARTMENT OF LABOR;
LORI CHAVEZ-DEREMER; UNITED
STATES DEPARTMENT OF STATE;
MARCO RUBIO; UNITED STATES
DEPARTMENT OF THE TREASURY;
SCOTT BESSENT; UNITED STATES
DEPARTMENT OF TRANSPORTATION;
SEAN DUFFY; UNITED STATES

No. 25-4476

D.C. No. 3:25-cv-03698-SI
Northern District of California,
San Francisco

ORDER

DEPARTMENT OF VETERANS
AFFAIRS; DOUG COLLINS;
AMERICORPS; JENNIFER BASTRESS
TAHMASEBI; UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY; LEE ZELDIN; UNITED
STATES GENERAL SERVICES
ADMINISTRATION; STEPHEN
EHIKIAN; NATIONAL LABOR
RELATIONS BOARD; MARVIN E.
KAPLAN; WILLIAM COWEN;
NATIONAL SCIENCE FOUNDATION;
BRIAN STONE; UNITED STATES
SMALL BUSINESS ADMINISTRATION;
KELLY LOEFFLER; SOCIAL SECURITY
ADMINISTRATION; FRANK
BISIGNANO, Commissioner of Social
Security,

    Petitioners,

 v.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
CALIFORNIA, SAN FRANCISCO,

    Respondent,

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO;
AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOYEES,
AFL-CIO; SERVICE EMPLOYEES
INTERNATIONAL UNION; AMERICAN
FEDERATION OF GOVERNMENT
EMPLOYEES - LOCAL 1122;
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES - LOCAL
1236; AMERICAN FEDERATION OF

GOVERNMENT EMPLOYEES - LOCAL
2110; AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES - LOCAL
3172; SERVICE EMPLOYEES
INTERNATIONAL UNION - LOCAL
1000; ALLIANCE FOR RETIRED
AMERICANS; AMERICAN
GEOPHYSICAL UNION; AMERICAN
PUBLIC HEALTH ASSOCIATION;
CENTER FOR TAXPAYER RIGHTS;
COALITION TO PROTECT AMERICA'S
NATIONAL PARKS; COMMON
DEFENSE CIVIC ENGAGEMENT; MAIN
STREET ALLIANCE; NATURAL
RESOURCES DEFENSE COUNCIL, INC.;
NORTHEAST ORGANIC FARMING
ASSOCIATION, INC.; VOTEVETS
ACTION FUND, INC.; WESTERN
WATERSHEDS PROJECT; COUNTY OF
SANTA CLARA; CITY OF CHICAGO;
COUNTY OF MARTIN LUTHER KING,
JR.,; COUNTY OF HARRIS; CITY OF
BALTIMORE; CITY AND COUNTY OF
SAN FRANCISCO,

Real Parties in Interest.

Before: William A. Fletcher, Johnnie B. Rawlinson, and Sandra S. Ikuta, Circuit Judges

ORDER

W. FLETCHER, Circuit Judge:

On July 21, 2025, the government parties, defendants in the district court, petitioned for a writ of mandamus that would require the district court to vacate a discovery order requiring *in camera* production of certain agency documents.

*Trump v. United States District Court for the Northern District of California,* No. 25-4476. On August 5, 2025, American Federation of Government Employees, AFL–CIO et al., plaintiffs in the district court and appellees in this court, moved for remand of the government parties' pending appeal of the district court's preliminary injunction. *American Federation of Government Employees v. Trump*, No. 25-3293.

We deny the petition for mandamus, and we vacate the district court's preliminary injunction and remand to the district court.

## I.  Background

On February 11, 2025, President Trump signed Executive Order 14210, directing federal agencies to commence large-scale reductions in force ("RIFs") as part of what the Executive Order characterized as a "critical transformation of the Federal bureaucracy." 90 Fed. Reg. 9669 (Feb. 11, 2025). Shortly thereafter, an implementing memorandum ("Memorandum") from the Office of Management and Budget ("OMB") and the Office of Personnel Management ("OPM") directed multiple federal agencies to submit Agency RIF and Reorganization Plans ("ARRPs") for review and approval by OMB and OPM.

Sweeping reorganizations and cuts to agency personnel swiftly followed. *See AFGE v. Trump*, 139 F.4th 1020, 1028, 1035 (9th Cir. 2025) (noting sweeping

cuts underway at, *inter alia*, Social Security Administration, Environmental Protection Agency, Department of Labor, General Services Administration, and Department of Housing and Urban Development); *AFGE v. Trump*, No. 25-CV-03698, ---- F.Supp.3d ----, 2025 WL 1482511, at *1 n.1, *5 (N.D. Cal. May 22, 2025) (same at, *inter alia*, Department of Health and Human Services, AmeriCorps, and Small Business Administration). Plaintiffs filed suit in the District Court for the Northern District of California, alleging in seven claims that the ongoing efforts to reorganize and cut broad swaths of the federal government were contrary to law. Dist. Ct. Dkt. No. 1 (complaint); Dist. Ct. Dkt. No. 100 (amended complaint). The district court addressed four of the seven claims (Claims I, II, III, and V). Based on those claims, it issued a temporary restraining order ("TRO") against the government defendants ("the government") on May 9, Dist. Ct. Dkt. No. 85, and a preliminary injunction on May 22. Dist Ct. Dkt. No. 124. The district court did not address the merits of the three other claims (Claims IV, VI, and VII), which remain pending in the district court.

The government appealed the grant of the preliminary injunction. A motions panel of this court denied the government's request for an emergency stay of the injunction. *AFGE*, 139 F.4th at 1029. The government then obtained an emergency stay from the Supreme Court. *Trump v. AFGE*, 145 S. Ct. 2635, 2635 (2025). The Court's brief order noted that the government was "likely to succeed

on its argument that the Executive Order and Memorandum are lawful," but the Court expressly declined to express any view on "the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum." *Id.* The Court noted that the district court had "enjoined further implementation or approval of the plans based on its view about the illegality of the Executive Order and Memorandum, not on any assessment of the plans themselves." *Id.* Justice Sotomayor wrote in a separate concurrence that she agreed with the Court's stay because it left the district court free to consider the legality of the plans and their implementation in the first instance. *Id.* (Sotomayor, J., concurring).

By the time the Supreme Court issued its stay order, discovery proceedings in the district court regarding agency defendants' ARRPs had already been under way for several months. The chronology of those proceedings reflects the care with which the district court has dealt with this case, and the "careful consideration" it has afforded to the government's assertion of privilege and attendant separation of powers concerns. *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019) (per curiam). The district court first ordered production of ARRPs on May 9, explaining that "the release of the ARRPs will significantly aid the Court's review of the merits of these APA claims." Dist. Ct. Dkt. No. 85 at 37. After the government moved for a protective order or for reconsideration based on

an asserted claim of deliberative process privilege, Dist. Ct. Dkt. No. 88, the district court stayed the production deadline to allow evaluation of the asserted privilege. Dist. Ct. Dkt. No. 92. Upon reconsideration, the district court on May 15 ordered the government to produce ARRPs from four agencies for *in camera* review in order to assess "whether the deliberative process privilege applies to the ARRPs of the federal agency defendants in this case." Dist. Ct. Dkt. No. 109, at 4.

After reviewing the four ARRPs *in camera*, the district court determined on the existing record that the assertion of privilege was inadequately supported. The court gave the government an opportunity to submit further declarations from the four agencies whose ARRPs it had reviewed. Dist. Ct. Dkt. No. 139. The government filed declarations under seal on June 13. Dist. Ct. Dkt. No. 165.

On July 18, the district court issued the discovery order at issue in the mandamus petition now before us. That order required *in camera* production of the ARRPs of all named agency defendants. Dist. Ct. Dkt. No. 214. On July 21, the government sought mandamus in our court, asking that we direct the district court to vacate its discovery order. We granted an administrative stay of the district court order pending our review of the mandamus petition.

On August 5, plaintiffs moved to remand the government's appeal of the district court's preliminary injunction.

We held oral argument on the mandamus petition and the remand request on August 21. For the reasons explained below, we deny the government's mandamus petition and grant plaintiffs' motion to remand to the district court.

## II. Mandamus Petition

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *In re Bundy*, 840 F.3d 1034, 1040 (9th Cir. 2016) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)); *see also In re S. Bay United Pentecostal Church*, 992 F.3d 945, 949 (9th Cir. 2021); *In re U.S.*, 791 F.3d 945, 954 (9th Cir. 2015). In *Cheney*, the Supreme Court cautioned that because "the writ is one of the most potent weapons in the judicial arsenal," it may issue only when the petitioner has no other adequate means to attain relief, and when petitioner demonstrates that the right to the writ is "clear and indisputable." 542 U.S. at 380–81 (cleaned up). Even where those prerequisites are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381.

In keeping with the high bar set by *Cheney*, our circuit applies a five-factor test in assessing petitions for mandamus. *See Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977); *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019). We have long held that the absence of the third factor, clear error, is dispositive; in the absence of clear error, the writ cannot be granted. *In re S. Bay*,

12

25-4476

992 F.3d at 949; *In re U.S.*, 791 F.3d at 955; *In re Bundy*, 840 F.3d at 1041.  The

bar for clear error is high:  "The clear error standard is significantly deferential and

is not met unless the reviewing court is left with a 'definite and firm conviction

that a mistake has been committed.'"  *In re Bundy*, 840 F.3d at 1041 (quoting *In re

U.S.,* 791 F.3d at 955).  Where there is "no prior Ninth Circuit authority [that]

prohibited the course taken by the District Court, its ruling is not clearly

erroneous."  *In re Morgan*, 506 F.3d 705, 713 (9th Cir. 2007). Even when the

above factors are met, mandamus remains "at bottom discretionary."  *In re U.S.*,

895 F.3d 1101, 1104 (9th Cir. 2018).  We find no clear error.

The government makes three primary arguments in favor of the writ: first,

that the ARRPs are protected by the deliberative process privilege; second, that the

privilege, if it exists here, is not overcome by the interest in discovery in this case;

and third, that judicial review ought to be confined to an administrative record

which, they assert, does not include the ARRPs.  We address these arguments in

turn.

The first two arguments are linked, and we consider them together.  There

are good reasons to conclude that the deliberative process privilege does not apply

to the ARRPs.  However, like the district court, we conclude that it is unnecessary

to decide that question since we find no clear error in the district court's

determination that the privilege, even if applicable, is overcome in the circumstances of this case.

A document must be both "predecisional" and "deliberative" for the deliberative process privilege to apply. *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)).

The government claims that the ARRPs are predecisional, echoing OMB's blanket statement that "[n]o ARRP is ever 'final.'" Dist. Ct. Dkt. No. 88-1 at 2; Pet. 12 ("A Plan is never final . . . ."). But as our circuit and others have long held, undifferentiated declarations of perpetual non-finality are an inadequate basis for a claim of privilege. "Any memorandum always will be 'predecisional' if referenced to a decision that possibly may be made at some undisclosed time in the future." *Assembly of State of Cal. v. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992); *see also Sackett v. EPA*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal."); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002) ("If the possibility . . . of future revision . . . could make agency action non-final as a matter of law, then it would be hard to imagine when any agency rule . . . would ever be final as a matter of law."). The breadth of the ongoing agency reorganizations and Reductions in Force ("RIFs") at issue in the

case before us undermines the government's contention that the ARRPs are predecisional in a sense that precludes judicial review. On May 16, six days before the district court issued the preliminary injunction, the Solicitor General had represented to the Supreme Court that "about 40 RIFs in 17 agencies were in progress." Stay Application at 29, *Trump v. AFGE*, No. 24A1106 (U.S. May 16, 2025). *See also AFGE*, 139 F.4th at 1028 (noting extensive reorganizations and RIFs already underway by late May); *AFGE*, ---- F.Supp.3d ----, 2025 WL 1482511, at *1 n.1, *5 (same). As the district court put it, "[I]f the ARRPs are non-final planning documents that do not commit an agency to take any specific action, pursuant to *what*, then, are the agencies implementing their large-scale reorganizations and RIFs?" Dist. Ct. Dkt. No. 214 at 10.

Further, there is little evidence in the record to support the government's assertion that the ARRPs are deliberative. Deliberative documents "reflect the give-and-take of the consultative process," and consist of "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. "Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, *suggesting as agency position that which is as yet only a personal position*." *Id.* (emphasis added). *See also Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1089, 1093 (9th Cir. 1997) (noting that "[w]e have

adopted the D.C. Circuit's definition" of the terms "deliberative process" and "predecisional"). Deliberative documents contain material "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866. But all available evidence, including the four ARRPs reviewed thus far *in camera*, indicates that the ARRPs represent the considered position of the agency submitted for approval by OMB, and not the personal opinions of an individual.

However, we are willing to assume arguendo, as did the district court, that at least some of the ARRPs are predecisional deliberative documents and that the privilege therefore applies. So assuming, we agree with the district court's conclusion that the privilege is overridden in the circumstances of this case. In determining whether the privilege is overridden, we consider the four factors articulated in *Warner*: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." 742 F.2d at 1161. The district court faithfully applied these factors in assessing whether the privilege, if applicable, is overcome by the litigant's "need for the materials and the need for accurate fact-finding." Dist. Ct. Dkt. No. 214 at 7–8 (quoting *Warner,* 742 F.2d at 1161).

The government's arguments against *in camera* disclosure do not withstand scrutiny. Regarding the first factor, the government contends that the ARRPs subject to the district court's discovery order are not relevant to any claims plaintiffs could plausibly assert in the wake of the Supreme Court's stay order. Pet. 13–14. The government is mistaken. The ARRPs are plainly relevant to the very issue that the Court's order expressly leaves open. The Court wrote, "We express no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum." *Trump v. AFGE*, 145 S. Ct. at 2635. That language most obviously pertains to the three claims (Claims IV, VI, and VII) upon which the district court expressly did not rely in issuing its preliminary injunction, and which were not considered by the Supreme Court. For example, Claim IV challenges, *inter alia*, any OMB and OPM decision approving an ARRP, while Claims VI and VII challenge the "implementation of ARRPs" by named agency defendants as arbitrary and capricious. Dist. Ct. Dkt. No. 100 at 111–15. The ARRPs are plainly relevant to those claims. Further, as we explain below, the ARRPs are also relevant to three of the four claims upon which the district court based its preliminary injunction. Justice Sotomayor specifically noted in her concurrence that since "[t]he plans themselves are not before this Court," the Court's order "leaves the District Court free to consider those questions in the first instance." *Trump v. AFGE*, 145 S. Ct. at

25-4476

2635 (Sotomayor, J., concurring). It is therefore entirely appropriate for the district court to proceed with discovery of those plans toward an initial determination of their legality.

The evidence provided by the ARRPs cannot be obtained elsewhere (second *Warner* factor); the government is a party to the litigation (third factor); and since the ARRPs do not represent the personal views of individual authors, it is unlikely that "disclosure would hinder frank and independent discussion regarding contemplated policies and decisions" (fourth factor). *Warner*, 742 F.2d at 1161. The government suggests that "production will have a chilling effect on internal Executive Branch deliberations," Pet. 2, but it offers no evidentiary support for this claim. Were it true that discovery of the ARRPs would "hinder frank and independent discussion" or otherwise harm the government, we might expect the disclosures already effectuated to have produced such effects. But the government has made no showing of harm resulting from disclosure of the four ARRPs already reviewed *in camera*, nor from the one ARRP already in the public record. *See* Supp.Add.164–71 (ARRP of National Endowment for the Humanities).

The government's third argument reframes the government's claim of privilege as a presumption that judicial review of agency action under the Administrative Procedure Act ("APA") is ordinarily limited to the administrative record. The government contends the ARRPs would not be included in a judicially

18

25-4476

reviewable record because, as it continues to argue, they are predecisional and deliberative. Besides the reasons already identified for doubting that characterization of the ARRPs, there are further reasons why this line of argument fails. First, plaintiffs challenge approval and implementation of the ARRPs not merely under the APA, but also as exceeding lawful authority and therefore *ultra vires*. *See infra*, at 21–22. Review of an *ultra vires* challenge would not be limited to an administrative record. Second, this case does not come to us in the posture of an ordinary APA review. There has been no compilation of a conventional administrative record, no notice-and-comment rulemaking, and no issuance of a final rule or adjudication. Instead, massive RIFs and reorganizations have been carried out without anything resembling the normal rulemaking or adjudicatory processes that typically produce a conventional administrative record. Indeed, government counsel acknowledged at oral argument that he was unsure whether "an administrative record has ever really been put together for a RIF." Oral Argument at 21:30. If there have been "departures from settled principles" in this case, *cf.* Dissent 11, they consist in the sweep of actions undertaken by the government without ordinary processes—actions which the government now seeks to shield from scrutiny by invoking presumptions ordinarily attendant upon the very processes it has ignored. With this case in its current posture, we see no

reason to insist that the district court remain ignorant of documents that may or may not eventually be included in an administrative record.

In short, we nowhere find clear error by the district court nor a clear entitlement to relief on the part of the government. Our denial of mandamus accords with the longstanding presumption that district courts have broad latitude to control discovery matters. *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (noting a district court's "wide discretion in controlling discovery"); *Pizzuto v. Tewalt*, 136 F.4th 855, 867 (9th Cir. 2025) ("wide latitude in controlling discovery"). Far from abusing its discretion, the district court has exercised care and restraint in managing discovery, affording "careful consideration" to the government's assertion of privilege. *Karnoski*, 926 F.3d at 1207; *see supra*, at 10–11.

### III. Motion to Remand

There are several factors, including developments since the district court's issuance of its preliminary injunction in May of this year, that bear on the question whether to remand to the district court: the Supreme Court's stay of the district court's injunction pending appeal; the Supreme Court's decision in *Trump v. Casa*, 145 S. Ct. 2540 (2025); ongoing agency reorganizations since the district court issued its injunction; the continuing pendency of Claims IV, VI and VII in the district court; and our decision today denying a writ of mandamus. Taking all of

these factors into account, we conclude that it would serve judicial economy for the district court to assess in the first instance the impact of these developments.

First, as noted above, the Supreme Court has stayed the district court's injunction pending review on appeal and certiorari to the Court. Some delay in reaching a decision in this case is thus already guaranteed.

Second, remand will afford the district court the opportunity to consider the impact of the Supreme Court's recent decision in *Trump v. Casa*. When the district court granted the preliminary injunction, *Casa* had not yet been decided. *Casa* severely limits the power of district courts to issue nationwide injunctions. At oral argument before us, government counsel stated the government will challenge the existing preliminary injunction on the ground that, inter alia, it is overly broad under *Casa*. Oral Argument at 55:31. Remand will allow the district court to tailor any possible injunction in light of *Casa*.

Third, a remand will allow the district court to assess this suit in light of government actions since the issuance of the now-stayed injunction in continuing to dismiss and threaten dismissal of employees. An up-to-date factual record will allow the district court to tailor any possible injunctive relief to current rather than past circumstances.

Fourth, remanding to the district court may not delay the ultimate termination of this litigation. The government would prefer to obtain a definitive ruling in its favor sooner rather than later. But, of course, it is not clear at this time that the government will prevail. Further, even if the government does ultimately prevail it may not suffer significant harm from a remand, given that it will be permitted to engage in its challenged behavior while the district court considers the case on remand, and given that the Supreme Court may well grant another stay of any relief that the district court may order. Finally, it is not clear, given the continued pendency of Claims IV, VI and VII in the district court, that a definitive ruling disposing of the entire litigation will be delayed by a remand of Claims I, II, III and V.

Fifth, the district court's evaluation of the claims we remand today will be assisted by the information that will be available based on discovery of the ARRPs at issue in the mandamus petition. The ARRPs will obviously be useful in evaluating Claims IV, VI and VII, which have remained in the district court. But as plaintiffs' counsel represented to us at oral argument without contradiction by the government, the ARRPs will also be useful in evaluating remanded Claims II, III and V. Claim II challenges not merely the Executive Order and Memorandum as *ultra vires*, but also all "actions and orders of OMB, OPM, and DOGE to implement" the Order, "including but not limited to . . . any direction, approval, or

22

25-4476

requirement imposed with respect to any ARRPs" as exceeding lawful authority, "contrary to statute and thus *ultra vires*." Dist. Ct. Dkt. No. 100 at 109. Claim III contains similar language challenging "any direction, approval or requirement imposed with respect to any ARRPs" as in violation of the APA. *Id.* at 111. Claim V encompasses within its challenge "any decision 'approving' an ARRP." *Id* at 113. The ARRPs at issue in the discovery order before us are plainly relevant to these elements of these three claims. A remand to allow the district court to consider these ARRPs, as well as other discovered evidence, is consistent with the Supreme Court's order, which expressly declined to express a view on the legality of the ARRPs.

We express no view on the merits of the current appeal and grant the motion to remand to the district court. We note that on September 9, the district court granted the government's motion to dismiss the allegations against defendant DOGE in Claims II–V of the amended complaint, denied the balance of the motion to dismiss, and granted plaintiffs leave to amend their allegations regarding DOGE. Dist. Ct. Dkt. No. 259 at 11–13. No appeal of the district court's September 9 order is before us.

## IV. Conclusion

We **DENY** the petition for writ of mandamus in *Trump v. United States District Court for the Northern District of California,* No. 25-4476. We **VACATE**

23

**AND REMAND** in *American Federation of Government Employees v. Trump*, No. 25-3293.

FILED

*Trump v. U.S. Dist. Court*, No. 25-4476 & *AFGE v. Trump*, No. 25-3293

SEP 19 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

IKUTA, Circuit Judge, dissenting in part:

The majority today does not acknowledge the district court's clear error in ordering the production of documents that implicate the executive branch's deliberative processes, even though producing such intra-executive branch dialogues implicates separation of process concerns that require the most "careful consideration" by the judiciary. *Karnoski v. Trump*, 926 F.3d 1180, 1206–07 (9th Cir. 2019) (per curiam). Because the district court's production order was clearly erroneous as a matter of law, and the other mandamus factors also favor the government, I respectfully dissent from the decision to deny mandamus relief.

I

On February 11, 2025, the President issued Executive Order 14210 (the EO) to require heads of federal agencies to "undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law." The EO also required the Agency Heads to develop and submit agency reorganization plans to the head of the Office of Management and Budget (OMB). The EO gave the Director of the Office of Personnel Management (OPM) authority to "grant exemptions from this order." To flesh out the EO, OMB and OPM issued a memorandum (the Memorandum) explaining the nature of the Agency RIF and Reorganization Plans (ARRPs) requested in the EO, and how the ARRPs should be

submitted for review and approval from OMB and OPM.  In effect, the EO and the Memorandum began a dialogue with federal agencies about potential RIFs and reorganizations.

In response to the EO and the Memorandum, the agencies provided OMB and OPM with ARRPs describing potential RIFs and reorganizations.  According to OMB, neither the ARRPs themselves, nor their review or approval, bound an agency to any particular course of action.  At some point, individual agencies proceeded with reductions in force.  The record does not reflect whether any agency adopted an ARRP for its final agency decision document.  Therefore, the majority errs in holding that the ARRPs are final agency actions as to the RIFs and reorganizations.  Maj. Ord. at 13–15.

A coalition of labor unions, nonprofit organizations, and municipal governments (collectively, Plaintiffs) brought seven claims against the President, OMB, OPM, and government agencies and their heads (the individual agency defendants) challenging the EO, the Memorandum, and the agencies' RIFs and reorganizations.  Claims I and II, the ultra vires claims, claimed that the President, OMB, and OPM acted outside their scope of authority, while Claims III, IV, and V alleged violations of the Administrative Procedure Act (APA).  Claims VI and VII alleged that the individual agency defendants violated the APA due to their

responses to OMB and OPM, such as by producing ARRPs for review and approval, and by engaging in RIFs and reorganizations.

In response to the Plaintiffs' motion, the district court granted a preliminary injunction that paused "further RIFs and reorganization of the executive branch for the duration of this lawsuit." The district court held that the Plaintiffs were likely to succeed on the merits of Claims I and II, the ultra vires claims, and Claims III and V, two APA claims against OMB and OPM. The district court reserved ruling on the other claims. The government appealed, and a motions panel of our court denied the government's motion for a stay pending appeal. *AFGE v. Trump (AFGE I)*, 139 F.4th 1020, 1029 (9th Cir. 2025).

In July 2025, the Supreme Court stayed the preliminary injunction "pending the disposition of the appeal in" the Ninth Circuit "and disposition of a petition for a writ of certiorari, if such a writ is timely sought." *Trump v. AFGE (AFGE II)*,145 S. Ct. 2635, 2635 (2025). The Supreme Court stated that "the Government is likely to succeed on its argument that the [EO] and Memorandum are lawful," and that "the other factors bearing on whether to grant a stay are satisfied." *Id.* However, the Supreme Court expressed "no view on the legality of any [ARRP] produced or approved pursuant to the [EO] and Memorandum," because "[t]hose plans [were] not before this Court." *Id.*

3

After the preliminary injunction was stayed, the parties proceeded with litigation. In May 2025, the district court ordered the government to produce all of the agencies' ARRPs on an expedited basis. In opposing that initial order, the government argued that the Plaintiffs' APA claims must be adjudicated based on the administrative record, and not on extra-record evidence. *See* 5 U.S.C. § 706 (stating that reviewing courts under the APA "shall review the whole record.") However, the district court rejected the government's argument, and on July 18, 2025, the district court again ordered the production of all the ARRPs (the production order) without deciding whether these materials would be part of any administrative record. Instead, the district court stated that there were narrow exceptions to the general rule that courts reviewing an agency action are limited to the administrative record, and it was "premature for the government to assert that such exceptions would never apply here."[1] The district court then "assume[d] without deciding that at least some ARRPs may include pre-decisional and deliberative materials," such that they would be protected from disclosure by the deliberative process privilege. But, the district court concluded "that the need for accurate fact-finding in this litigation overrides any interest in non-disclosure."

---

[1] After the Supreme Court stayed the district court's preliminary injunction, the district court focused on the relevance of the ARRPs to the remaining APA claims that were not addressed by its preliminary injunction order.

4

The government petitioned for a writ of mandamus and asked us to "direct[]
the district court to vacate its order of July 18, 2025."

## II

The district court's order for discovery of the ARRPs, which are pre-
termination, pre-decisional documents, is clearly erroneous. A "well-settled
principle[] govern[s] judicial review of agency action under the APA." *Blue
Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024).
Namely, "the whole record" in an APA action under 5 U.S.C. § 706 is ordinarily
'the record the agency presents.'" *Id.* at 444–45 (quoting *Fla. Power & Light Co.
v. Lorion*, 470 U.S. 729, 743–44 (1985)). "Thus, barring clear evidence to the
contrary, we presume that an agency properly designated the Administrative
Record." *Id.* at 445 (citation modified). "[A] court is ordinarily limited to
evaluating the agency's contemporaneous explanation in light of the existing
administrative record." *Dep't of Commerce v. New York*, 588 U.S. 752, 780 (2019)
(citing *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense
Council, Inc.*, 435 U.S. 519, 549 (1978)). Thus, deliberative documents prepared
for the decision-making process are ordinarily not part of the administrative record.
*Blue Mountains Biodiversity Project*, 99 F.4th at 445. Courts may justify extra-
record discovery only on a "strong showing of bad faith or improper behavior" by

the agency decisionmakers. *Dep't of Commerce*, 588 U.S. at 781 (citation omitted).[2]

Pre-decisional, deliberative documents are protected by the deliberative process privilege. *See FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam). This privilege "was developed to promote frank and independent discussion among those responsible for making governmental decisions, and also to protect against premature disclosure of proposed agency policies or decisions." *Id.* (citation modified). We have held that the deliberative process privilege is applicable if a document meets two requirements. First, it must be pre-decisional, in that "it must have been generated before the adoption of an agency's policy or decision." *Id.* Second, it "must be deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Id.*; *see also Karnoski*, 926 F.3d at 1204 (stating that the deliberative process privilege protects "'documents reflecting advisory opinions, recommendations and

---

[2] The majority claims that judicial review would not be limited to the administrative record because the Plaintiffs have raised ultra vires claims in addition to their APA claims. Maj. Ord. at 19. But the district court did not require the production of the ARRPs to support its analysis of the Plaintiffs' ultra vires claims. Rather, the district court concluded that the Plaintiffs were likely to succeed on the merits of their ultra vires claims because the President, OMB, and OPM violated separation of powers and therefore exceeded their lawful authority in ordering the agencies to engage in RIFs and reorganizations.

deliberations comprising part of a process by which governmental decisions and policies are formulated'" (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001))).[3]  The ARRPs meet both requirements, as they provided recommendations for potential RIF and reorganization plans before the agencies implemented their final decision.[4]

The privilege "although not absolute, require[s] careful consideration by the judiciary, even when [it has] not been clearly or persuasively raised by the government." *Karnoski*, 926 F.3d at 1207.  Its "unique features" suggest that, when a district court orders production of such deliberative documents, "there is no other adequate means of relief" beyond mandamus.  *Id.* at 1203.

---

[3] Contrary to the majority, our cases do not limit the deliberative process privilege to personal opinions alone.  Maj. Ord. at 15–16.  Even *Coastal States Gas Corp. v. Dep't of Energy*, the out-of-circuit case on which the majority relies, lists communications that are "subjective or personal" in nature as just one example of the types of documents protected by the deliberative process privilege.  617 F.2d 854, 868 (D.C. Cir. 1980).

[4] The deliberative process privilege is equally applicable outside the APA context.  *See, e.g.*, *Warner Comm'ns*, 742 F.2d at 1161–62 (applying privilege in action to block a proposed joint venture under the Federal Trade Commission Act); *United States v. Fernandez*, 231 F.3d 1240, 1246–47 (9th Cir. 2000) (applying privilege to documents related to government's request for authorization to pursue death penalty).  To the extent the district court ordered production of the ARRPs to assess the ultra vires claims, the deliberative process privilege would still apply.

Special considerations inform courts in deciding whether discovery of such documents is warranted. *See* Order, *U.S. Doge Service v. Ctr. for Responsibility and Ethics in Washington*, No. 24A1122 (U.S. June 6, 2025). Courts must consider "whether the District Court's actions constituted an unwarranted impairment of another branch in the performance of its constitutional duties." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 390 (2004). Ordinarily, courts limit their evaluation to "reflect[] the recognition that further judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government and should normally be avoided." *Dep't of Commerce*, 588 U.S. at 780–81 (citation modified).

Here, the district court clearly exceeded the scope of its authority. Judicial review "is ordinarily limited" to the administrative record, *id.* at 780, subject to limited exceptions.[5] Not only did the district court err in failing to decide whether the ARRPs were part of such record, but it further erred by failing to decide

_____

[5] The majority claims that there is no conventional administrative record because the government's RIFs and reorganizations have been carried out without the processes that would ordinarily produce such a record. Maj. Ord. at 18–19. However, Plaintiffs themselves sought production of the administrative record in the district court and contend that such a record should be available. While government counsel noted at oral argument that he was unsure whether "an administrative record has even been put together for a RIF," he did not suggest that such a record does not exist or could not be compiled.

whether an exception to that general rule was applicable, and by putting the burden on the government to show that an exception to the rule did *not* apply.[6]  Rather, to justify an order compelling extra-record discovery, the district court must find that a narrow exception applies, not merely assert that exceptions are possible.  *See Dep't of Commerce*, 588 U.S. at 781; *Blue Mountains Biodiversity Project*, 99 F.4th at 445 ("Deliberative documents, which are prepared to aid the decision-maker in arriving at a decision, are ordinarily not relevant to" assessing the lawfulness of agency action) (citations omitted).

Furthermore, the district court clearly erred by failing to address separation of powers concerns.  Generally, courts may not intrude "into the workings of another branch of Government."  *Dep't of Commerce*, 588 U.S. at 780-81.  Courts "may not reject an agency's stated reason for acting simply because the agency might also have had other unstated reasons," and they "may not set aside an agency's policymaking decision solely because it might have been . . . prompted by an Administration's priorities."  *Id.*  Inquiring into the "mental processes of administrative decisionmakers" requires, at minimum, "a strong showing of bad

---

[6] The majority errs by determining, based on its own fact-finding, that the ARRPs would be part of any administrative record and may be disclosed to the district court and plaintiffs' counsel.  Maj. Ord. at 15, 18–19.  Nothing in the record supports this determination.

9

faith or improper behavior." *Id.* (citation modified). This concern is especially strong for communications within the Executive Branch. *See, e.g.*, Order, *U.S. Doge Service*; *Cheney*, 542 U.S. at 385. The district court order implicates these concerns by compelling disclosure of pre-decisional, deliberative communications within the Executive Branch. But, instead of addressing the separation of powers, the district court considered only the possible damage to the government's employee recruitment, retention, and labor relations. The district court did not consider whether its order requiring "extra-record discovery" would implicate the separation of powers concerns that the Supreme Court identified in *Department of Commerce.* 588 U.S. at 781–82. Thus, the district court "should not have ordered extra-record discovery when it did," *id.*, and its production order was clearly erroneous.

These departures from settled principles establish that the district court's production order is clearly erroneous as a matter of law.[7] To conclude otherwise, the majority assumes that the ARRPs are final agency actions and then

---

[7] The other mandamus factors are also satisfied here. The district court's order is not directly appealable, as it is neither a final order nor an interlocutory order granting an injunction. *See* 28 U.S.C. §§ 1291, 1292(a). The government would be harmed from the disclosure of privileged deliberations to the district court and plaintiffs' counsel, which cannot be reversed or rectified by an appeal from final judgment. *See Karnoski*, 926 F.3d at 1203. Finally, the order raises "new and important problems or issues of first impression." *Id.*

characterizes the issues involved as ordinary "discovery matters."  Maj. Ord. at 20.

Therefore, I respectfully dissent from the denial of the government's petition for a

writ of mandamus.