No. 25-4476

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

In re DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,

*Petitioners-Defendants.*

(full caption on inside cover)

————————————

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of California

————————————

## PETITION FOR REHEARING OR REHEARING EN BANC

————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

CRAIG H. MISSAKIAN
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
COURTNEY L. DIXON
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

In re DONALD J. TRUMP, *in his official capacity as President of the United States, et al.,*

DONALD J. TRUMP, *in his official capacity as President of the United States*; OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; UNITED STATES DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity*; AMY GLEASON, *in her official capacity as Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETER HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, Jr., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, *in her official capacity as Attorney General of the United States*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF THE TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, *in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS, (a.k.a the Corporation for National and Community Service); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN E. KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; SOCIAL SECURITY ADMINISTRATION; FRANK BISIGNANO, *in his official capacity as Commissioner of Social Security*, *Petitioners-Defendants*,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, *Respondent*,

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA; CITY OF CHICAGO; COUNTY OF MARTIN LUTHER KING, JR.; COUNTY OF HARRIS; CITY OF BALTIMORE; *and* CITY AND COUNTY OF SAN FRANCISCO, *Real Parties in Interest-Plaintiffs.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND RULE 40(B) STATEMENT .................................................. 1

STATEMENT ............................................................................................................ 2

    A.    Background .................................................................................... 2

    B.    Prior Proceedings ......................................................................... 4

REASONS FOR GRANTING REHEARING ........................................................... 10

CONCLUSION ........................................................................................................ 18

CERTIFICATE OF COMPLIANCE

ADDENDUM

## INTRODUCTION AND RULE 40(B) STATEMENT

A divided panel of this Court denied the government's mandamus petition and permitted intrusive discovery into the internal deliberations of more than twenty agencies. That decision conflicts with multiple decisions of the Supreme Court and of this Court and gives short shrift to the important separation-of-powers concerns raised by "compelling disclosure of pre-decisional, deliberative communications within the Executive Branch." Reh'g.Add.34 (Ikuta, J., dissenting). En banc review is warranted.

With only one noted dissent, the Supreme Court stayed a preliminary injunction issued by the district court in this case, concluding that plaintiffs were unlikely to succeed on the merits of their challenges to an Executive Order and an associated guidance memorandum, which call for agencies to prepare to reorganize themselves and to undertake reductions in force (RIFs) consistent with applicable law. *See Trump v. AFGE*, 145 S. Ct. 2635 (2025). Yet just days later, the district court issued an order compelling production of privileged documents concerning agency plans for those potential reorganizations and RIFs. And it did so despite plaintiffs' failure to identify any viable legal theory for which the documents could make a material difference.

In sanctioning that extraordinary order, the panel majority made at least two critical errors. First, litigation under the Administrative Procedure Act (APA) proceeds on the administrative record assembled by the defendant agency, except in

rare circumstances where the plaintiff satisfies its burden to show that a limited exception applies. The majority, like the district court, did not find that any exception to the record-review rule applied; instead, it simply shrugged off that rule and inverted the normal burdens that apply in APA cases. Second, the documents at issue are sensitive executive-branch documents prepared at the direction of the President to facilitate policy priorities; separation-of-powers concerns require courts to carefully limit compelled disclosure of such material, but the majority, like the district court, failed to heed those principles and instead treated this matter as if it were an ordinary discovery dispute. As Judge Ikuta recognized in dissent, the majority's decision cannot be reconciled with multiple decisions of this Court or the Supreme Court.

The majority ignored basic principles of administrative law to excuse the district court's authorization of a fishing expedition through agency records in search of a viable legal theory. The en banc court should correct this serious departure from settled precedent.

## STATEMENT

### A.    Background

**1.** The Office of Personnel Management (OPM) is an independent establishment in the Executive Branch that assists the President in overseeing the federal workforce. *See* 5 U.S.C. §§ 1101-1104. The Office of Management and Budget (OMB) is a component of the Executive Office of the President that assists the President in preparing the budget and overseeing agencies. *See* 31 U.S.C. §§ 501-503.

2

Federal law expressly recognizes that the government may conduct RIFs, an "administrative procedure by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002); *see* 5 U.S.C. § 3502. OPM has promulgated regulations specifying requirements for RIFs, under which "OPM may examine an agency's preparations for [RIFs] at any stage." 5 C.F.R. § 351.205. Agencies' authority to conduct RIFs predates the modern civil service. *See* Act of Aug. 15, 1876, 19 Stat. 143, 169.

**2.** In February, the President issued an executive order directing "Agency Heads [to] promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law." Mandamus.Add.158-60. The order sets priorities for how agencies carry out RIFs and categorically exempts from RIFs "functions related to public safety, immigration enforcement, or law enforcement." Mandamus.Add.159.

The Executive Order further provides that, by March 13, 2025, "Agency Heads shall submit to" OMB "a report that identifies any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities," and which "discuss[es] whether the agency or any of its subcomponents should be eliminated or consolidated." Mandamus.Add.159. The Executive Order emphasizes it "shall be implemented consistent with applicable law and subject to the availability of appropriations." Mandamus.Add.160.

3

Two weeks later, OPM and OMB jointly issued a guidance Memorandum to agencies. Mandamus.Add.162-68. The Memorandum explained that agencies should submit Agency RIF and Reorganization Plans that "seek to achieve" (1) "[b]etter service for the American people"; (2) "[i]ncreased productivity"; (3) "[a] significant reduction in the number of full-time … positions by eliminating positions that are not required"; (4) "[a] reduced real property footprint; and (5) "[r]educed budget topline." Mandamus.Add.162-63. OPM and OMB cautioned agencies, in formulating the Plans, to review "their statutory authority and ensure that their plans and actions are consistent with such authority." Mandamus.Add.163.

The Plans do not themselves implement any RIFs. Rather, the Plans describe RIFs that an agency may undertake. Mandamus.Add.165-66. Agencies must then follow an established process to actually reduce their workforce, including providing 30- or 60-days' notice, *id.* at 7. *See* 5 U.S.C. § 3502; 5 C.F.R. Part 351 Subpart H.

**B.    Prior Proceedings**

Plaintiffs are unions, advocacy organizations, and local governments. Mandamus.Add.51-59. After the President issued the Executive Order, they sued the President, OPM, OMB, the U.S. DOGE Service (USDS), and twenty-one federal agencies. Mandamus.Add.59-64. Plaintiffs principally alleged that the President transgressed the separation of powers by directing agencies to prepare for RIFs and that OMB and OPM usurped other agencies' statutory authority by providing related guidance as the President directed. *See, e.g.*, Mandamus.Add.49.

4

**1.** The district court entered a putative temporary restraining order on May 9, 2025, and further ordered the government to produce, by May 13, 2025, four categories of documents: (1) "the versions of all defendant agency [Plans] submitted to OMB and OPM," (2) "the versions of all" Plans "approved by OMB and OPM," (3) "any agency applications for waivers of statutorily-mandated RIF notice periods," and (4) "any responses by OMB or OPM to such waiver requests." Dkt. 85 at 40. In ordering the production of those documents, the court explained only that "good cause [for disclosure] ha[d] been shown pursuant to Federal Rule of Civil Procedure 26(d)." *Id.* The government moved for reconsideration and a protective order to prevent disclosure of the Plans, Mandamus.Add.173-83, and the plaintiffs agreed not to oppose an order pausing the government's production obligation until the court ruled on the motion for reconsideration, Mandamus.Add.171-72.

The district court subsequently stayed its discovery order pending further consideration of the government's motion, Mandamus.Add.169, and directed the government to file additional declarations to enable the court to "assess whether the [deliberative process] privilege applies" to the agency Plans it had previously ordered the government to produce, Mandamus.Add.29.

**2.** The district court entered a preliminary injunction on May 22, 2025. On the merits, the court held that absent express authorization, the President cannot direct agencies to engage in large-scale RIFs and that OMB, OPM, and USDS are unlawfully usurping agencies' authority to make RIF determinations. Dkt. 124. The government

appealed and sought a stay pending appeal. A divided motions panel of this Court denied the stay motion. *See AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025).

The Supreme Court granted the government's application for a stay of the preliminary injunction, noting that the government is "likely to succeed on its argument that the Executive Order and Memorandum are lawful" and that the "other factors bearing on whether to grant a stay are satisfied." *Trump v. AFGE*, 145 S. Ct. at 2635. The Court explained that it "express[ed] no view on the legality of any Agency RIF and Reorganization Plan," noting that the district court "enjoined further implementation or approval of the plans based on its view about the illegality of the Executive Order and Memorandum, not on any assessment of the plans themselves," which were not before the Court. *Id.*

Justice Sotomayor concurred in the grant of a stay, noting that "the relevant Executive Order directs agencies to plan reorganizations and reductions in force 'consistent with applicable law,'" as the Memorandum reiterated, and that "[t]he plans themselves are not before this Court." *Trump v. AFGE*, 145 S. Ct. at 2635 (Sotomayor, J., concurring). Only Justice Jackson noted her dissent.

**3.** Following the Supreme Court's stay decision, plaintiffs filed in district court an "urgent request" that the district court confirm its prior discovery order and deny the government's request for reconsideration and a protective order. Mandamus.Add.12-26. The district court granted plaintiffs' motion in part on July 18, 2025, ordering the government to produce to the court and plaintiffs' counsel, by

Wednesday, July 23, at noon PST, "the versions of [Plans] submitted to OMB and

OPM" and "the versions of [Plans] approved by OMB and/or OPM."

Mandamus.Add.10.

      Addressing the deliberative-process privilege, the district court assumed that

"at least some [Plans] may include pre-decisional and deliberative materials," but

concluded that plaintiffs' need for the Plans outweighed the government's interest in

non-disclosure. Mandamus.Add.7. The court concluded that the Plans were relevant

to plaintiffs' claim under the APA alleging that defendants' "implementation of [the

Plans] are arbitrary and capricious." Mandamus.Add.6. The court rejected the

government's arguments that, to the extent plaintiffs alleged any APA claim

challenging the agency's implementation of RIFs that remained viable following the

Supreme Court's stay decision, any such claim would have to be "adjudicated based

on the administrative record," which has not yet been compiled, and the Plans would

not be part of the administrative record. Mandamus.Add.6. The court explained that

there are "exceptions to the general rule that courts" are limited to the administrative

record and speculated that such an exception might apply here. Mandamus.Add.6.

The court dismissed as "specious" the government's assertions that disclosure of the

Plans would harm the government, noting that any harm to the government is "self-

inflicted" by the decision to engage in RIFs. Mandamus.Add.6.

      In ordering disclosure, the court granted the government's motion for a

protective order limiting dissemination of the Plans to plaintiffs' counsel, at least "at

this still-early stage of the case." Mandamus.Add.9. The court also permitted the government to redact, in the material provided to plaintiffs' counsel, "any material addressing union negotiating strategy." Mandamus.Add.9.

**5.** The government petitioned for a writ of mandamus and sought a stay pending consideration of the petition and an administrative stay. A panel of this Court granted an administrative stay "pending further order." Order (July 22, 2025).

Following oral argument, a divided panel denied the petition. Reh'g.Add.12-20. Like the district court, the majority assumed without deciding that the Plans are protected by the deliberative-process privilege, although it raised doubts on the ground, for example, that "the [Plans] represent the considered position of the agency submitted for approval by OMB, and not the personal opinions of an individual." Reh'g.Add.16; *see* Reh'g.Add.13. The court of appeals concluded that, in any event, "the privilege is overridden" because the Plans are relevant to respondents' legal claims and, among other things, disclosure of the Plans "is unlikely … '[to] hinder frank and independent discussion regarding contemplated policies and decisions'" within the government. Reh'g.Add.18 (citation omitted).

The panel further rejected the government's contention that the disclosure order was improper given that "judicial review under the [APA] is ordinarily limited to the administrative record." Reh'g.Add.18. The majority asserted that plaintiffs "challenge approval and implementation of the [Plans] not merely under the APA, but also as exceeding lawful authority and therefore *ultra vires*." Reh'g.Add.19. And the

panel stated that "this case does not come to us in the posture of an ordinary APA review" because "[t]here has been no compilation of a conventional administrative record, no notice-and-comment rulemaking, and no issuance of a final rule or adjudication." Reh'g.Add.19.

Judge Ikuta dissented. Reh'g.Add.25-35. She began by explaining that courts in APA cases are "'ordinarily limited to evaluating the agency's contemporaneous explanation [for its action] in light of the existing administrative record,'" which is presumed to have been properly compiled, and that "deliberative documents are ordinarily not part of the administrative record." Reh'g.Add.29; *see* Reh'g.Add.30 n.2 (noting that "the district court did not require the production of the [Plans] to support its analysis of the Plaintiffs' ultra vires claims"). Judge Ikuta concluded that "the [Plans] are deliberative materials because they provided recommendations for potential RIF and reorganization plans before the agencies implemented their final decision." Reh'g.Add.31. Therefore, she explained, "[n]ot only did the district court err in failing to decide whether the [Plans] were part of [the administrative] record, but it further erred by failing to decide whether an exception to that general rule was applicable, and by putting the burden on the government to show that an exception to the rule did *not* apply." Reh'g.Add.32-33.

Judge Ikuta further noted that "the district court clearly erred by failing to address [the] separation of powers concerns" raised by "compelling disclosure of pre-decisional, deliberative communications within the Executive Branch." Reh'g.Add.33-

9

34. She rejected the majority's characterization of "the issues involved as ordinary 'discovery matters.'" Reh'g.Add.35. Because "[t]hese departures from settled principles establish that the district court's production order is clearly erroneous as a matter of law," and the other mandamus factors were satisfied, Judge Ikuta would have granted the writ. Reh'g.Add.34-35 & n.7.

The panel's decision did not address the administrative stay it had previously granted pending further order.

## REASONS FOR GRANTING REHEARING

The panel's decision denying a writ of mandamus conflicts with Supreme Court and circuit precedent and presents a question of exceptional importance concerning disclosure of deliberative Executive Branch materials. Rehearing by the full Court is warranted.

**A.** The deliberative-process privilege is a subset of executive privilege and protects deliberations by shielding from disclosure documents "reflecting advisory opinions, recommendations and comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). "[I]t would be impossible to have any frank discussions of legal or policy matters in writing if all such writings were to be subjected to public scrutiny." *EPA v. Mink*, 410 U.S. 73, 87 (1973). "The privilege is rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *United States Fish & Wildlife Serv. v.*

10

*Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). Only material that is predecisional and deliberative falls within the scope of the privilege. "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Fish & Wildlife Serv.*, 592 U.S. at 268. Where the privilege applies, it may be overcome if a litigant's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner Communc'ns*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam).

**1.** The panel, like the district court, "assume[d] arguendo . . . that at least some of the [Plans] are predecisional documents and that the privilege therefore applies." Reh'g.Add.16. That assumption is plainly warranted. As Judge Ikuta explained, the Plans were prepared by agencies to "provide[] recommendations for potential RIF and reorganization plans before the agencies implemented their final decision." Reh'g.Add.31. That is why both the Executive Order and Memorandum directed the Plans be submitted to OPM and OMB, as part of a collaborative dialogue with those offices about agencies' planned efforts to streamline their operations. Mandamus.Add.159, 164-67. Accordingly, the Plans are always subject to change, and nothing in any Plan irrevocably commits an agency to taking any specific step, regardless of whether OPM or OMB have opined upon the Plan during an inter-agency process. *See* Mandamus.Add.185.

Although the panel made the same assumption as the district court, it expressed doubt that the deliberative-process privilege applies. Reh'g.Add.14-16. Those doubts are unfounded. The panel suggested that the Plans are not deliberative because they represent an agency position rather than "the personal opinions of an individual." Reh'g.Add.16. But as Judge Ikuta explained, the deliberative-process privilege is plainly not limited "to personal opinions alone," and there is no legal or logical basis for excluding an agency's views during an inter-agency deliberation. Reh'g.Add.31 n.7. And this Court has held the privilege applies to personal opinions *and* other materials, including documents that would "prematurely disclose the views of the agency." *National Wildlife Fed'n* v. *United States Forest Serv.*, 861 F.2d 1114, 1119 (1988) (citation omitted).

The panel was likewise mistaken in suggesting that the Plans might not be predecisional because some agencies have in fact engaged in RIFs and reorganizations. The mere fact that an agency ultimately took an action does not transform a preceding proposal into a final decision. The question is whether the document was generated "to assist an agency decisionmaker in arriving at his decision," *Common Cause* v. *IRS*, 646 F.2d 656, 659 (D.C. Cir. 1981), not whether a decision was subsequently made. Moreover, simply because an agency proceeded with a RIF does not mean it did so "pursuant to" a Plan. *Contra* Reh'g.Add.15. Any such action would be undertaken pursuant to the agency's own statutory authorities to conduct RIFs; they are not finalized or compelled by the Plans.

12

**2.** The panel and the district court erred in concluding that the privilege had been overcome.

In ordering the Plans' disclosure, the district court concluded that the Plans are relevant to count VII in plaintiff's complaint, an APA claim alleging an arbitrary-and-capricious challenge to agencies' "implementation" of RIFs. Mandamus.Add.5. But neither that claim nor any other APA claim raised in plaintiffs' complaint can support disclosure. In APA cases, "[a] court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Department of Commerce* v. *New York*, 588 U.S. 752, 780 (2019)). That means the administrative record prepared by the agency, "not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Under these basic principles, compelled disclosure of the Plans is clearly unwarranted and at the very least premature. It remains unclear what final agency actions plaintiffs purport to challenge. Regardless, no administrative record for any final agency action implicated by this case has yet been provided or assessed for adequacy. Some defendant agencies may not even have taken any "final agency action" subject to APA review at all, 5 U.S.C. § 704. For the same reasons that the Plans are predecisional and deliberative, they do not themselves constitute final action.

Moreover, even if administrative records had been certified, the Plans plainly would not be part of them because they are deliberative materials. "Deliberative documents, which are prepared to aid the decision-maker in arriving at a decision, are

13

ordinarily not relevant" in an APA case. *Blue Mountains*, 99 F.4th at 445. Nor has there

been any suggestion of "bad faith or improper behavior," much less the "strong

showing" of such conduct required to invoke an exception to the record-review rule.

*Department of Commerce*, 588 U.S. at 781. In nonetheless compelling disclosure of the

Plans, the district court speculated that such an exception might apply and inverted

the burden for justifying discovery in an APA case. *See* Mandamus.Add.6;

Reh'g.Add.33-34. The burden is not on the government to preemptively negate that

any exception might be possible—let alone before any administrative record has even

been compiled and certified, in part because many of the potential RIFs discussed in

the Plans have not even been finalized. *See San Luis & Delta-Mendota Water Auth. v.

Locke*, 776 F.3d 971, 993 (9th Cir. 2014).

The panel majority deviated even more significantly from established

precedent, suggesting without citation that these elementary principles of

administrative law do not apply in this case because of the purportedly "sweep[ing]"

nature of the Executive Order and its implementation, which the panel understood as

being "without ordinary processes." Reh'g.Add.19. The Supreme Court's stay order

concluded that the Executive Order and Memorandum are likely lawful, however, and

any agency RIF or reorganization must be assessed on its own merits pursuant to

normal civil processes if and when any such final agency action occurs. *See* 145 S. Ct.

at 2635. While the majority emphasized the government's doubt whether an

administrative record has or would ever be assembled for a RIF, Reh'g.Add.19, there

is a simple reason for that uncertainty: the Civil Service Reform Act channels challenges to RIFs to the Merit Systems Protection Board (MSPB), 5 U.S.C. §§ 7512, 7513(d), 7701; 5 C.F.R. § 351.901, and plaintiffs have identified no precedent for an APA challenge to a RIF. In this context, and at this stage of the case, it is perfectly reasonably for the defendant agencies to not know the precise scope of any eventual administrative record. *Cf. Honicker v. NRC*, 590 F.2d 1207, 1209 (D.C. Cir. 1978) (when "[t]he administrative process is not completed[] … there is no record or final determination of the substantive issues for reviewable appeal."). Regardless, as discussed above, to the extent there are disputes about the content of the administrative record, those disputes can be litigated in the ordinary course—any such questions are not a basis to preemptively and prematurely compel the disclosure of deliberative and predecisional documents.

The panel likewise erred in concluding that the Plans are relevant to "*ultra vires*" claims that are not subject to the APA record-review rule. Reh'g.Add.19. As Judge Ikuta explained, "the district court did not require the production of the [Plans] to support its analysis of the Plaintiffs' ultra vires claims," Reh'g.Add.30 n.2, so those claims are simply not relevant to the production order. And in any event, to the extent those claims challenge agency actions, plaintiffs cannot end-run the APA's procedures through an equitable *ultra vires* claim. The Supreme Court has made clear that an *ultra vires* claim is constrained by "implied statutory limitations," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015), and is "essentially a Hail Mary pass" that is

15

subject to much higher standards than other challenges to executive action and "rarely succeeds," *NRC v. Texas*, 605 U.S. 665, 682 (2025). *Ultra vires* review "does not apply simply because an agency has arguably reached a conclusion which does not comport with the law. Rather, it applies only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute," *id.* at 681 (citations omitted), and plaintiffs have pointed to no such statutory prohibition, *see* Mandamus.Add.140-43. And to the extent the *ultra vires* claims challenge the Executive Order and Memorandum, the Plans postdate those actions and thus shed no light on their legality.

**3.** The panel's error is heightened in the context of discovery against the Executive Branch. As Judge Ikuta explained, this is not a dispute over "ordinary 'discovery matters.'" Reh'g.Add.35 (quoting Reh'g.Add.20). Courts must take adequate account of the "special considerations" that "control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Cheney v. U.S. Dist. Ct.*, 542 U.S 367, 385 (2004). Thus, discovery against an Executive Branch agency must be authorized only as a last resort and must be "precisely identified" and no broader than necessary to serve its purpose. *Id.* at 387, 390; *see also In re United States*, 583 U.S. 29 (2017) (per curiam); *United States DOGE Serv. v. CREW*, 145 S. Ct. 1981, 1982 (2025).

Here, the district court ordered production of deliberative documents prepared at the request of the President and that the President's Executive Order directed be

sent to OMB, a component of the Executive Office of the President. *See*
Mandamus.Add.159. These documents speak to how agencies plan to implement core
presidential priorities; to be effective, they must candidly convey the agencies'
assessments of their staffing needs and programmatic priorities. *See*
Mandamus.Add.163-67. It would plainly hamper agencies' ability to communicate
effectively with the President and those components charged with coordinating his
agenda if agencies had to be concerned about the deliberative documents' use in
future litigation. The district court and the panel majority alike failed to take heed of
these weighty constitutional considerations in reflexively ordering disclosure. *See*
Reh'g.Add.34.

 **B.** In sum, the panel's decision conflicts with precedents of the Supreme Court
and this Court and implicates questions of exceptional importance. *See* Fed. R. App.
P. 35(a)(2), (b)(1)(B). The deliberative-process privilege exists because disclosure of
deliberative documents chills the willingness of government officials to engage in
"open, frank discussion[s]" about difficult policy choices. *Mink*, 410 U.S. at 87. Here,
where the discussion involves top-level officials making long-term policy judgments at
the President's request, the government's interest in confidentiality is compelling. The
government cannot function if officials are worried that in writing down their
proposals and strategies for future staffing needs or for budget talks with
congressional appropriators or for any number of other sensitive decisions, those
deliberations may be shared on a whim, without need, and contrary to law and settled

practice with the government's litigation adversaries. The stakes of disclosure justify rehearing.

Moreover, if allowed to stand, the panel's published opinion would skew the proper standard in deliberative-process cases and seriously undermine core government interests if applied to future invocations of privilege in contravention of this Court's prior precedents, which demand "careful consideration" of such claims. *Karnoski v. Trump*, 926 F.3d 1180, 1206-07 (9th Cir. 2019) (per curiam).

## CONCLUSION

The Court should grant rehearing or rehearing en banc.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

CRAIG H. MISSAKIAN
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
COURTNEY L. DIXON

 */s/ Maxwell A. Baldi*
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

September 2025

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limit of Circuit Rule 40-1(b) because it contains 4,196 words. This petition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
Maxwell A. Baldi

**ADDENDUM**

## TABLE OF CONTENTS

Panel Opinion (Sept. 19, 2025).........................................................Reh'g.Add.1

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 19 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES - LOCAL 1122; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES - LOCAL 1236; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES - LOCAL 2110; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES - LOCAL 3172; SERVICE EMPLOYEES INTERNATIONAL UNION - LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND, INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA; CITY OF CHICAGO; COUNTY OF MARTIN LUTHER KING, | No. 25-3293<br><br>D.C. No. 3:25-cv-03698-SI<br>Northern District of California,<br>San Francisco<br><br>ORDER |

JR.,; COUNTY OF HARRIS; CITY OF
BALTIMORE; CITY AND COUNTY OF
SAN FRANCISCO,

　　　　　　　Plaintiffs - Appellees,

　v.

DONALD J. TRUMP, in his official
capacity as President of the United States;
UNITED STATES OFFICE OF
MANAGEMENT AND BUDGET;
RUSSELL VOUGHT, in his official
capacity as Director of U.S. Office of
Management and Budget; UNITED
STATES OFFICE OF PERSONNEL
MANAGEMENT; CHARLES EZELL, in
his official capacity as Acting Director of
the U.S. Office of Personnel Management;
UNITED STATES DEPARTMENT OF
GOVERNMENT EFFICIENCY; ELON
MUSK, in his official capacity as the actual
head of the Department of Government
Efficiency; AMY GLEASON, in her official
capacity as the titular Acting Administrator
of the Department of Government
Efficiency; UNITED STATES
DEPARTMENT OF AGRICULTURE;
BROOKE ROLLINS, in her official
capacity as Secretary of the U.S.
Department of Agriculture; UNITED
STATES DEPARTMENT OF
COMMERCE; HOWARD LUTNICK, in
his official capacity as Secretary of the U.S.
Department of Commerce; UNITED
STATES DEPARTMENT OF DEFENSE;
PETER HEGSETH, in his official capacity
as Secretary of the U.S. Department of
Defense; UNITED STATES
DEPARTMENT OF ENERGY; CHRIS

WRIGHT, in his official capacity as
Secretary of the U.S. Department of Energy;
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
ROBERT F. KENNEDY, Jr., in his official
capacity as Secretary of the U.S.
Department of Health and Human Services;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; KRISTI
NOEM, in her official capacity as Secretary
of the U.S. Department of Homeland
Security; UNITED STATES
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT; SCOTT
TURNER, in his official capacity as
Secretary of the U.S. Department of
Housing and Urban Development; DOJ -
UNITED STATES DEPARTMENT OF
JUSTICE; PAMELA BONDI, Attorney
General, in her official capacity as Attorney
General of the U.S. Department of Justice;
UNITED STATES DEPARTMENT OF
THE INTERIOR; DOUG BURGUM, in his
official capacity as Secretary of the U.S.
Department of the Interior; UNITED
STATES DEPARTMENT OF LABOR;
LORI CHAVEZ-DEREMER, in her official
capacity as Secretary of the U.S.
Department of Labor; UNITED STATES
DEPARTMENT OF STATE; MARCO
RUBIO, in his official capacity as Secretary
of the U.S. Department of State; UNITED
STATES DEPARTMENT OF THE
TREASURY; SCOTT BESSENT, in his
official capacity as Secretary of U.S.
Department of Treasury; UNITED STATES
DEPARTMENT OF TRANSPORTATION;
SEAN DUFFY, in his official capacity as
Secretary for the U.S. Department of
Transportation; UNITED STATES

DEPARTMENT OF VETERANS
AFFAIRS; DOUG COLLINS, in his official
capacity as Secretary of Veterans Affairs;
AMERICORPS; JENNIFER BASTRESS
TAHMASEBI, in her official capacity as
Interim Agency Head of AmeriCorps;
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; LEE ZELDIN,
in his official capacity as Administrator of
U.S. Environmental Protection Agency;
UNITED STATES GENERAL SERVICES
ADMINISTRATION; STEPHEN
EHIKIAN, in his official capacity as Acting
Administrator for U.S. General Services
Administration; NATIONAL LABOR
RELATIONS BOARD; MARVIN E.
KAPLAN, in his official capacity as
Chairman of the National Labor Relations
Board; WILLIAM COWEN, in his official
capacity as the Acting General Counsel of
the National Labor Relations Board;
NATIONAL SCIENCE FOUNDATION;
BRIAN STONE, in his official capacity as
Acting Director of the National Science
Foundation; UNITED STATES SMALL
BUSINESS ADMINISTRATION; KELLY
LOEFFLER, in her official capacity as
Administrator of the U.S. Small Business
Administration; SOCIAL SECURITY
ADMINISTRATION; FRANK
BISIGNANO, Commissioner of Social
Security, in his official capacity as
Commissioner of the U.S. Social Security
Administration,

Defendants - Appellants.

25-4476

IN Re DONALD J. TRUMP

_____

DONALD J. TRUMP; UNITED STATES
OFFICE OF MANAGEMENT AND
BUDGET; RUSSELL VOUGHT; UNITED
STATES OFFICE OF PERSONNEL
MANAGEMENT; CHARLES EZELL;
UNITED STATES DEPARTMENT OF
GOVERNMENT EFFICIENCY; ELON
MUSK; AMY GLEASON; UNITED
STATES DEPARTMENT OF
AGRICULTURE; BROOKE ROLLINS;
UNITED STATES DEPARTMENT OF
COMMERCE; HOWARD LUTNICK;
UNITED STATES DEPARTMENT OF
DEFENSE; PETER HEGSETH; UNITED
STATES DEPARTMENT OF ENERGY;
CHRIS WRIGHT; UNITED STATES
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; ROBERT F.
KENNEDY, Jr.; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM; UNITED
STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT; SCOTT
TURNER; DOJ - UNITED STATES
DEPARTMENT OF JUSTICE; PAMELA
BONDI, Attorney General; UNITED
STATES DEPARTMENT OF THE
INTERIOR; DOUG BURGUM; UNITED
STATES DEPARTMENT OF LABOR;
LORI CHAVEZ-DEREMER; UNITED
STATES DEPARTMENT OF STATE;
MARCO RUBIO; UNITED STATES
DEPARTMENT OF THE TREASURY;
SCOTT BESSENT; UNITED STATES
DEPARTMENT OF TRANSPORTATION;
SEAN DUFFY; UNITED STATES

No. 25-4476

D.C. No. 3:25-cv-03698-SI
Northern District of California,
San Francisco

ORDER

DEPARTMENT OF VETERANS
AFFAIRS; DOUG COLLINS;
AMERICORPS; JENNIFER BASTRESS
TAHMASEBI; UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY; LEE ZELDIN; UNITED
STATES GENERAL SERVICES
ADMINISTRATION; STEPHEN
EHIKIAN; NATIONAL LABOR
RELATIONS BOARD; MARVIN E.
KAPLAN; WILLIAM COWEN;
NATIONAL SCIENCE FOUNDATION;
BRIAN STONE; UNITED STATES
SMALL BUSINESS ADMINISTRATION;
KELLY LOEFFLER; SOCIAL SECURITY
ADMINISTRATION; FRANK
BISIGNANO, Commissioner of Social
Security,

   Petitioners,

 v.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
CALIFORNIA, SAN FRANCISCO,

   Respondent,

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO;
AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOYEES,
AFL-CIO; SERVICE EMPLOYEES
INTERNATIONAL UNION; AMERICAN
FEDERATION OF GOVERNMENT
EMPLOYEES - LOCAL 1122;
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES - LOCAL
1236; AMERICAN FEDERATION OF

GOVERNMENT EMPLOYEES - LOCAL
2110; AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES - LOCAL
3172; SERVICE EMPLOYEES
INTERNATIONAL UNION - LOCAL
1000; ALLIANCE FOR RETIRED
AMERICANS; AMERICAN
GEOPHYSICAL UNION; AMERICAN
PUBLIC HEALTH ASSOCIATION;
CENTER FOR TAXPAYER RIGHTS;
COALITION TO PROTECT AMERICA'S
NATIONAL PARKS; COMMON
DEFENSE CIVIC ENGAGEMENT; MAIN
STREET ALLIANCE; NATURAL
RESOURCES DEFENSE COUNCIL, INC.;
NORTHEAST ORGANIC FARMING
ASSOCIATION, INC.; VOTEVETS
ACTION FUND, INC.; WESTERN
WATERSHEDS PROJECT; COUNTY OF
SANTA CLARA; CITY OF CHICAGO;
COUNTY OF MARTIN LUTHER KING,
JR.,; COUNTY OF HARRIS; CITY OF
BALTIMORE; CITY AND COUNTY OF
SAN FRANCISCO,

Real Parties in Interest.

Before: William A. Fletcher, Johnnie B. Rawlinson, and Sandra S. Ikuta, Circuit
Judges

ORDER

W. FLETCHER, Circuit Judge:

On July 21, 2025, the government parties, defendants in the district court,
petitioned for a writ of mandamus that would require the district court to vacate a
discovery order requiring *in camera* production of certain agency documents.

*Trump v. United States District Court for the Northern District of California,* No. 25-4476.  On August 5, 2025, American Federation of Government Employees, AFL–CIO et al., plaintiffs in the district court and appellees in this court, moved for remand of the government parties' pending appeal of the district court's preliminary injunction.  *American Federation of Government Employees v. Trump*, No. 25-3293.

We deny the petition for mandamus, and we vacate the district court's preliminary injunction and remand to the district court.

## I.  Background

On February 11, 2025, President Trump signed Executive Order 14210, directing federal agencies to commence large-scale reductions in force ("RIFs") as part of what the Executive Order characterized as a "critical transformation of the Federal bureaucracy."  90 Fed. Reg. 9669 (Feb. 11, 2025).  Shortly thereafter, an implementing memorandum ("Memorandum") from the Office of Management and Budget ("OMB") and the Office of Personnel Management ("OPM") directed multiple federal agencies to submit Agency RIF and Reorganization Plans ("ARRPs") for review and approval by OMB and OPM.

Sweeping reorganizations and cuts to agency personnel swiftly followed. *See AFGE v. Trump*, 139 F.4th 1020, 1028, 1035 (9th Cir. 2025) (noting sweeping

cuts underway at, *inter alia*, Social Security Administration, Environmental

Protection Agency, Department of Labor, General Services Administration, and

Department of Housing and Urban Development); *AFGE v. Trump*, No. 25-CV-

03698, ---- F.Supp.3d ----, 2025 WL 1482511, at *1 n.1, *5 (N.D. Cal. May 22,

2025) (same at, *inter alia*, Department of Health and Human Services,

AmeriCorps, and Small Business Administration).  Plaintiffs filed suit in the

District Court for the Northern District of California, alleging in seven claims that

the ongoing efforts to reorganize and cut broad swaths of the federal government

were contrary to law.  Dist. Ct. Dkt. No. 1 (complaint); Dist. Ct. Dkt. No. 100

(amended complaint).  The district court addressed four of the seven claims

(Claims I, II, III, and V).  Based on those claims, it issued a temporary restraining

order ("TRO") against the government defendants ("the government") on May 9,

Dist. Ct. Dkt. No. 85, and a preliminary injunction on May 22.  Dist Ct. Dkt. No.

124.  The district court did not address the merits of the three other claims (Claims

IV, VI, and VII), which remain pending in the district court.

The government appealed the grant of the preliminary injunction.  A

motions panel of this court denied the government's request for an emergency stay

of the injunction.  *AFGE*, 139 F.4th at 1029.  The government then obtained an

emergency stay from the Supreme Court.  *Trump v. AFGE*, 145 S. Ct. 2635, 2635

(2025).  The Court's brief order noted that the government was "likely to succeed

on its argument that the Executive Order and Memorandum are lawful," but the

Court expressly declined to express any view on "the legality of any Agency RIF

and Reorganization Plan produced or approved pursuant to the Executive Order

and Memorandum." *Id.* The Court noted that the district court had "enjoined

further implementation or approval of the plans based on its view about the

illegality of the Executive Order and Memorandum, not on any assessment of the

plans themselves." *Id.* Justice Sotomayor wrote in a separate concurrence that she

agreed with the Court's stay because it left the district court free to consider the

legality of the plans and their implementation in the first instance. *Id.* (Sotomayor,

J., concurring).

By the time the Supreme Court issued its stay order, discovery proceedings

in the district court regarding agency defendants' ARRPs had already been under

way for several months. The chronology of those proceedings reflects the care

with which the district court has dealt with this case, and the "careful

consideration" it has afforded to the government's assertion of privilege and

attendant separation of powers concerns. *Karnoski v. Trump*, 926 F.3d 1180, 1207

(9th Cir. 2019) (per curiam). The district court first ordered production of ARRPs

on May 9, explaining that "the release of the ARRPs will significantly aid the

Court's review of the merits of these APA claims." Dist. Ct. Dkt. No. 85 at 37.

After the government moved for a protective order or for reconsideration based on

an asserted claim of deliberative process privilege, Dist. Ct. Dkt. No. 88, the

district court stayed the production deadline to allow evaluation of the asserted

privilege.  Dist. Ct. Dkt. No. 92.  Upon reconsideration, the district court on May

15 ordered the government to produce ARRPs from four agencies for *in camera*

review in order to assess "whether the deliberative process privilege applies to the

ARRPs of the federal agency defendants in this case."  Dist. Ct. Dkt. No. 109, at 4.

     After reviewing the four ARRPs *in camera*, the district court determined on

the existing record that the assertion of privilege was inadequately supported.  The

court gave the government an opportunity to submit further declarations from the

four agencies whose ARRPs it had reviewed.  Dist. Ct. Dkt. No. 139.  The

government filed declarations under seal on June 13.  Dist. Ct. Dkt. No. 165.

     On July 18, the district court issued the discovery order at issue in the

mandamus petition now before us.  That order required *in camera* production of

the ARRPs of all named agency defendants.  Dist. Ct. Dkt. No. 214.  On July 21,

the government sought mandamus in our court, asking that we direct the district

court to vacate its discovery order.  We granted an administrative stay of the

district court order pending our review of the mandamus petition.

     On August 5, plaintiffs moved to remand the government's appeal of the

district court's preliminary injunction.

We held oral argument on the mandamus petition and the remand request on August 21.   For the reasons explained below, we deny the government's mandamus petition and grant plaintiffs' motion to remand to the district court.

## II.  Mandamus Petition

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes."  *In re Bundy*, 840 F.3d 1034, 1040 (9th Cir. 2016) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)); *see also In re S. Bay United Pentecostal Church*, 992 F.3d 945, 949 (9th Cir. 2021); *In re U.S.*, 791 F.3d 945, 954 (9th Cir. 2015).  In *Cheney*, the Supreme Court cautioned that because "the writ is one of the most potent weapons in the judicial arsenal," it may issue only when the petitioner has no other adequate means to attain relief, and when petitioner demonstrates that the right to the writ is "clear and indisputable."  542 U.S. at 380–81 (cleaned up).  Even where those prerequisites are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."  *Id.* at 381.

In keeping with the high bar set by *Cheney*, our circuit applies a five-factor test in assessing petitions for mandamus.  *See Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977); *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019).  We have long held that the absence of the third factor, clear error, is dispositive; in the absence of clear error, the writ cannot be granted.  *In re S. Bay*,

992 F.3d at 949; *In re U.S.*, 791 F.3d at 955; *In re Bundy*, 840 F.3d at 1041.  The

bar for clear error is high:  "The clear error standard is significantly deferential and

is not met unless the reviewing court is left with a 'definite and firm conviction

that a mistake has been committed.'"  *In re Bundy*, 840 F.3d at 1041 (quoting *In re

U.S.,* 791 F.3d at 955).  Where there is "no prior Ninth Circuit authority [that]

prohibited the course taken by the District Court, its ruling is not clearly

erroneous."  *In re Morgan*, 506 F.3d 705, 713 (9th Cir. 2007). Even when the

above factors are met, mandamus remains "at bottom discretionary."  *In re U.S.*,

895 F.3d 1101, 1104 (9th Cir. 2018).  We find no clear error.

The government makes three primary arguments in favor of the writ: first,

that the ARRPs are protected by the deliberative process privilege; second, that the

privilege, if it exists here, is not overcome by the interest in discovery in this case;

and third, that judicial review ought to be confined to an administrative record

which, they assert, does not include the ARRPs.  We address these arguments in

turn.

The first two arguments are linked, and we consider them together.  There

are good reasons to conclude that the deliberative process privilege does not apply

to the ARRPs.  However, like the district court, we conclude that it is unnecessary

to decide that question since we find no clear error in the district court's

determination that the privilege, even if applicable, is overcome in the circumstances of this case.

A document must be both "predecisional" and "deliberative" for the deliberative process privilege to apply. *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)).

The government claims that the ARRPs are predecisional, echoing OMB's blanket statement that "[n]o ARRP is ever 'final.'" Dist. Ct. Dkt. No. 88-1 at 2; Pet. 12 ("A Plan is never final . . . ."). But as our circuit and others have long held, undifferentiated declarations of perpetual non-finality are an inadequate basis for a claim of privilege. "Any memorandum always will be 'predecisional' if referenced to a decision that possibly may be made at some undisclosed time in the future." *Assembly of State of Cal. v. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992); *see also Sackett v. EPA*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal."); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002) ("If the possibility . . . of future revision . . . could make agency action non-final as a matter of law, then it would be hard to imagine when any agency rule . . . would ever be final as a matter of law."). The breadth of the ongoing agency reorganizations and Reductions in Force ("RIFs") at issue in the

case before us undermines the government's contention that the ARRPs are predecisional in a sense that precludes judicial review. On May 16, six days before the district court issued the preliminary injunction, the Solicitor General had represented to the Supreme Court that "about 40 RIFs in 17 agencies were in progress." Stay Application at 29, *Trump v. AFGE*, No. 24A1106 (U.S. May 16, 2025). *See also AFGE*, 139 F.4th at 1028 (noting extensive reorganizations and RIFs already underway by late May); *AFGE*, ---- F.Supp.3d ----, 2025 WL 1482511, at *1 n.1, *5 (same). As the district court put it, "[I]f the ARRPs are non-final planning documents that do not commit an agency to take any specific action, pursuant to *what*, then, are the agencies implementing their large-scale reorganizations and RIFs?" Dist. Ct. Dkt. No. 214 at 10.

Further, there is little evidence in the record to support the government's assertion that the ARRPs are deliberative. Deliberative documents "reflect the give-and-take of the consultative process," and consist of "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. "Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, *suggesting as agency position that which is as yet only a personal position*." *Id.* (emphasis added). *See also Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1089, 1093 (9th Cir. 1997) (noting that "[w]e have

Reh'g.Add.15

adopted the D.C. Circuit's definition" of the terms "deliberative process" and "predecisional").  Deliberative documents contain material "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866.  But all available evidence, including the four ARRPs reviewed thus far *in camera*, indicates that the ARRPs represent the considered position of the agency submitted for approval by OMB, and not the personal opinions of an individual.

However, we are willing to assume arguendo, as did the district court, that at least some of the ARRPs are predecisional deliberative documents and that the privilege therefore applies.  So assuming, we agree with the district court's conclusion that the privilege is overridden in the circumstances of this case.  In determining whether the privilege is overridden, we consider the four factors articulated in *Warner*:  "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  742 F.2d at 1161.  The district court faithfully applied these factors in assessing whether the privilege, if applicable, is overcome by the litigant's "need for the materials and the need for accurate fact-finding."  Dist. Ct. Dkt. No. 214 at 7–8 (quoting *Warner,* 742 F.2d at 1161).

The government's arguments against *in camera* disclosure do not withstand scrutiny.  Regarding the first factor, the government contends that the ARRPs subject to the district court's discovery order are not relevant to any claims plaintiffs could plausibly assert in the wake of the Supreme Court's stay order.  Pet. 13–14.  The government is mistaken.  The ARRPs are plainly relevant to the very issue that the Court's order expressly leaves open.  The Court wrote, "We express no view on the legality of any Agency RIF and Reorganization Plan produced or approved pursuant to the Executive Order and Memorandum."  *Trump v. AFGE*, 145 S. Ct. at 2635.  That language most obviously pertains to the three claims (Claims IV, VI, and VII) upon which the district court expressly did not rely in issuing its preliminary injunction, and which were not considered by the Supreme Court.  For example, Claim IV challenges, *inter alia*, any OMB and OPM decision approving an ARRP, while Claims VI and VII challenge the "implementation of ARRPs" by named agency defendants as arbitrary and capricious.  Dist. Ct. Dkt. No. 100 at 111–15.  The ARRPs are plainly relevant to those claims.  Further, as we explain below, the ARRPs are also relevant to three of the four claims upon which the district court based its preliminary injunction.  Justice Sotomayor specifically noted in her concurrence that since "[t]he plans themselves are not before this Court," the Court's order "leaves the District Court free to consider those questions in the first instance." *Trump v. AFGE*, 145 S. Ct. at

**Reh'g.Add.17**

2635 (Sotomayor, J., concurring). It is therefore entirely appropriate for the district court to proceed with discovery of those plans toward an initial determination of their legality.

The evidence provided by the ARRPs cannot be obtained elsewhere (second *Warner* factor); the government is a party to the litigation (third factor); and since the ARRPs do not represent the personal views of individual authors, it is unlikely that "disclosure would hinder frank and independent discussion regarding contemplated policies and decisions" (fourth factor). *Warner*, 742 F.2d at 1161. The government suggests that "production will have a chilling effect on internal Executive Branch deliberations," Pet. 2, but it offers no evidentiary support for this claim. Were it true that discovery of the ARRPs would "hinder frank and independent discussion" or otherwise harm the government, we might expect the disclosures already effectuated to have produced such effects. But the government has made no showing of harm resulting from disclosure of the four ARRPs already reviewed *in camera*, nor from the one ARRP already in the public record. *See* Supp.Add.164–71 (ARRP of National Endowment for the Humanities).

The government's third argument reframes the government's claim of privilege as a presumption that judicial review of agency action under the Administrative Procedure Act ("APA") is ordinarily limited to the administrative record. The government contends the ARRPs would not be included in a judicially

reviewable record because, as it continues to argue, they are predecisional and deliberative. Besides the reasons already identified for doubting that characterization of the ARRPs, there are further reasons why this line of argument fails. First, plaintiffs challenge approval and implementation of the ARRPs not merely under the APA, but also as exceeding lawful authority and therefore *ultra vires*. *See infra*, at 21–22. Review of an *ultra vires* challenge would not be limited to an administrative record. Second, this case does not come to us in the posture of an ordinary APA review. There has been no compilation of a conventional administrative record, no notice-and-comment rulemaking, and no issuance of a final rule or adjudication. Instead, massive RIFs and reorganizations have been carried out without anything resembling the normal rulemaking or adjudicatory processes that typically produce a conventional administrative record. Indeed, government counsel acknowledged at oral argument that he was unsure whether "an administrative record has ever really been put together for a RIF." Oral Argument at 21:30. If there have been "departures from settled principles" in this case, *cf.* Dissent 10, they consist in the sweep of actions undertaken by the government without ordinary processes—actions which the government now seeks to shield from scrutiny by invoking presumptions ordinarily attendant upon the very processes it has ignored. With this case in its current posture, we see no

reason to insist that the district court remain ignorant of documents that may or may not eventually be included in an administrative record.

In short, we nowhere find clear error by the district court nor a clear entitlement to relief on the part of the government. Our denial of mandamus accords with the longstanding presumption that district courts have broad latitude to control discovery matters. *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (noting a district court's "wide discretion in controlling discovery"); *Pizzuto v. Tewalt*, 136 F.4th 855, 867 (9th Cir. 2025) ("wide latitude in controlling discovery"). Far from abusing its discretion, the district court has exercised care and restraint in managing discovery, affording "careful consideration" to the government's assertion of privilege. *Karnoski*, 926 F.3d at 1207; *see supra*, at 10–11.

### III. Motion to Remand

There are several factors, including developments since the district court's issuance of its preliminary injunction in May of this year, that bear on the question whether to remand to the district court: the Supreme Court's stay of the district court's injunction pending appeal; the Supreme Court's decision in *Trump v. Casa*, 145 S. Ct. 2540 (2025); ongoing agency reorganizations since the district court issued its injunction; the continuing pendency of Claims IV, VI and VII in the district court; and our decision today denying a writ of mandamus. Taking all of

these factors into account, we conclude that it would serve judicial economy for the district court to assess in the first instance the impact of these developments.

First, as noted above, the Supreme Court has stayed the district court's injunction pending review on appeal and certiorari to the Court. Some delay in reaching a decision in this case is thus already guaranteed.

Second, remand will afford the district court the opportunity to consider the impact of the Supreme Court's recent decision in *Trump v. Casa*. When the district court granted the preliminary injunction, *Casa* had not yet been decided. *Casa* severely limits the power of district courts to issue nationwide injunctions. At oral argument before us, government counsel stated the government will challenge the existing preliminary injunction on the ground that, inter alia, it is overly broad under *Casa*. Oral Argument at 55:31. Remand will allow the district court to tailor any possible injunction in light of *Casa*.

Third, a remand will allow the district court to assess this suit in light of government actions since the issuance of the now-stayed injunction in continuing to dismiss and threaten dismissal of employees. An up-to-date factual record will allow the district court to tailor any possible injunctive relief to current rather than past circumstances.

Fourth, remanding to the district court may not delay the ultimate termination of this litigation.  The government would prefer to obtain a definitive ruling in its favor sooner rather than later.  But, of course, it is not clear at this time that the government will prevail.  Further, even if the government does ultimately prevail it may not suffer significant harm from a remand, given that it will be permitted to engage in its challenged behavior while the district court considers the case on remand, and given that the Supreme Court may well grant another stay of any relief that the district court may order.  Finally, it is not clear, given the continued pendency of Claims IV, VI and VII in the district court, that a definitive ruling disposing of the entire litigation will be delayed by a remand of Claims I, II, III and V.

Fifth, the district court's evaluation of the claims we remand today will be assisted by the information that will be available based on discovery of the ARRPs at issue in the mandamus petition.  The ARRPs will obviously be useful in evaluating Claims IV, VI and VII, which have remained in the district court.  But as plaintiffs' counsel represented to us at oral argument without contradiction by the government, the ARRPs will also be useful in evaluating remanded Claims II, III and V.  Claim II challenges not merely the Executive Order and Memorandum as *ultra vires*, but also all "actions and orders of OMB, OPM, and DOGE to implement" the Order, "including but not limited to . . . any direction, approval, or

requirement imposed with respect to any ARRPs" as exceeding lawful authority, "contrary to statute and thus *ultra vires*." Dist. Ct. Dkt. No. 100 at 109. Claim III contains similar language challenging "any direction, approval or requirement imposed with respect to any ARRPs" as in violation of the APA. *Id.* at 111. Claim V encompasses within its challenge "any decision 'approving' an ARRP." *Id* at 113. The ARRPs at issue in the discovery order before us are plainly relevant to these elements of these three claims. A remand to allow the district court to consider these ARRPs, as well as other discovered evidence, is consistent with the Supreme Court's order, which expressly declined to express a view on the legality of the ARRPs.

We express no view on the merits of the current appeal and grant the motion to remand to the district court. We note that on September 9, the district court granted the government's motion to dismiss the allegations against defendant DOGE in Claims II–V of the amended complaint, denied the balance of the motion to dismiss, and granted plaintiffs leave to amend their allegations regarding DOGE. Dist. Ct. Dkt. No. 259 at 11–13. No appeal of the district court's September 9 order is before us.

## IV. Conclusion

We **DENY** the petition for writ of mandamus in *Trump v. United States District Court for the Northern District of California,* No. 25-4476. We **VACATE**

**Reh'g.Add.23**

**AND REMAND** in *American Federation of Government Employees v. Trump*, No.

25-3293.

FILED

*Trump v. U.S. Dist. Court*, No. 25-4476 & *AFGE v. Trump*, No. 25-3293

SEP 19 2025

IKUTA, Circuit Judge, dissenting in part:

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

The majority today does not acknowledge the district court's clear error in

ordering the production of documents that implicate the executive branch's

deliberative processes, even though producing such intra-executive branch

dialogues implicates separation of process concerns that require the most "careful

consideration" by the judiciary. *Karnoski v. Trump*, 926 F.3d 1180, 1206–07 (9th

Cir. 2019) (per curiam). Because the district court's production order was clearly

erroneous as a matter of law, and the other mandamus factors also favor the

government, I respectfully dissent from the decision to deny mandamus relief.

I

On February 11, 2025, the President issued Executive Order 14210 (the EO)

to require heads of federal agencies to "undertake preparations to initiate large-

scale reductions in force (RIFs), consistent with applicable law." The EO also

required the Agency Heads to develop and submit agency reorganization plans to

the head of the Office of Management and Budget (OMB). The EO gave the

Director of the Office of Personnel Management (OPM) authority to "grant

exemptions from this order." To flesh out the EO, OMB and OPM issued a

memorandum (the Memorandum) explaining the nature of the Agency RIF and

Reorganization Plans (ARRPs) requested in the EO, and how the ARRPs should be

submitted for review and approval from OMB and OPM.  In effect, the EO and the Memorandum began a dialogue with federal agencies about potential RIFs and reorganizations.

In response to the EO and the Memorandum, the agencies provided OMB and OPM with ARRPs describing potential RIFs and reorganizations.  According to OMB, neither the ARRPs themselves, nor their review or approval, bound an agency to any particular course of action.  At some point, individual agencies proceeded with reductions in force.  The record does not reflect whether any agency adopted an ARRP for its final agency decision document.  Therefore, the majority errs in holding that the ARRPs are final agency actions as to the RIFs and reorganizations.  Maj. Ord. at 13–15.

A coalition of labor unions, nonprofit organizations, and municipal governments (collectively, Plaintiffs) brought seven claims against the President, OMB, OPM, and government agencies and their heads (the individual agency defendants) challenging the EO, the Memorandum, and the agencies' RIFs and reorganizations.  Claims I and II, the ultra vires claims, claimed that the President, OMB, and OPM acted outside their scope of authority, while Claims III, IV, and V alleged violations of the Administrative Procedure Act (APA).  Claims VI and VII alleged that the individual agency defendants violated the APA due to their

responses to OMB and OPM, such as by producing ARRPs for review and approval, and by engaging in RIFs and reorganizations.

In response to the Plaintiffs' motion, the district court granted a preliminary injunction that paused "further RIFs and reorganization of the executive branch for the duration of this lawsuit." The district court held that the Plaintiffs were likely to succeed on the merits of Claims I and II, the ultra vires claims, and Claims III and V, two APA claims against OMB and OPM. The district court reserved ruling on the other claims. The government appealed, and a motions panel of our court denied the government's motion for a stay pending appeal. *AFGE v. Trump (AFGE I)*, 139 F.4th 1020, 1029 (9th Cir. 2025).

In July 2025, the Supreme Court stayed the preliminary injunction "pending the disposition of the appeal in" the Ninth Circuit "and disposition of a petition for a writ of certiorari, if such a writ is timely sought." *Trump v. AFGE (AFGE II)*, 145 S. Ct. 2635, 2635 (2025). The Supreme Court stated that "the Government is likely to succeed on its argument that the [EO] and Memorandum are lawful," and that "the other factors bearing on whether to grant a stay are satisfied." *Id.* However, the Supreme Court expressed "no view on the legality of any [ARRP] produced or approved pursuant to the [EO] and Memorandum," because "[t]hose plans [were] not before this Court." *Id.*

After the preliminary injunction was stayed, the parties proceeded with
litigation.  In May 2025, the district court ordered the government to produce all of
the agencies' ARRPs on an expedited basis.  In opposing that initial order, the
government argued that the Plaintiffs' APA claims must be adjudicated based on
the administrative record, and not on extra-record evidence.  *See* 5 U.S.C. § 706
(stating that reviewing courts under the APA "shall review the whole record.")
However, the district court rejected the government's argument, and on July 18,
2025, the district court again ordered the production of all the ARRPs (the
production order) without deciding whether these materials would be part of any
administrative record.  Instead, the district court stated that there were narrow
exceptions to the general rule that courts reviewing an agency action are limited to
the administrative record, and it was "premature for the government to assert that
such exceptions would never apply here."[1]  The district court then "assume[d]
without deciding that at least some ARRPs may include pre-decisional and
deliberative materials," such that they would be protected from disclosure by the
deliberative process privilege.  But, the district court concluded "that the need for
accurate fact-finding in this litigation overrides any interest in non-disclosure."

---

[1] After the Supreme Court stayed the district court's preliminary injunction,
the district court focused on the relevance of the ARRPs to the remaining APA
claims that were not addressed by its preliminary injunction order.

4

The government petitioned for a writ of mandamus and asked us to "direct[]
the district court to vacate its order of July 18, 2025."

## II

The district court's order for discovery of the ARRPs, which are pre-
termination, pre-decisional documents, is clearly erroneous.  A "well-settled
principle[] govern[s] judicial review of agency action under the APA."  *Blue
Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024).
Namely, "the whole record" in an APA action under 5 U.S.C. § 706 is ordinarily
'the record the agency presents.'"  *Id.* at 444–45 (quoting *Fla. Power & Light Co.
v. Lorion*, 470 U.S. 729, 743–44 (1985)).  "Thus, barring clear evidence to the
contrary, we presume that an agency properly designated the Administrative
Record."  *Id.* at 445 (citation modified).  "[A] court is ordinarily limited to
evaluating the agency's contemporaneous explanation in light of the existing
administrative record."  *Dep't of Commerce v. New York*, 588 U.S. 752, 780 (2019)
(citing *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense
Council, Inc.*, 435 U.S. 519, 549 (1978)).  Thus, deliberative documents prepared
for the decision-making process are ordinarily not part of the administrative record.
*Blue Mountains Biodiversity Project*, 99 F.4th at 445.  Courts may justify extra-
record discovery only on a "strong showing of bad faith or improper behavior" by

5

the agency decisionmakers. *Dep't of Commerce*, 588 U.S. at 781 (citation

omitted).[2]

Pre-decisional, deliberative documents are protected by the deliberative

process privilege. *See FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th

Cir. 1984) (per curiam). This privilege "was developed to promote frank and

independent discussion among those responsible for making governmental

decisions, and also to protect against premature disclosure of proposed agency

policies or decisions." *Id.* (citation modified). We have held that the deliberative

process privilege is applicable if a document meets two requirements. First, it

must be pre-decisional, in that "it must have been generated before the adoption of

an agency's policy or decision." *Id.* Second, it "must be deliberative in nature,

containing opinions, recommendations, or advice about agency policies." *Id.*; *see

also Karnoski*, 926 F.3d at 1204 (stating that the deliberative process privilege

protects "'documents reflecting advisory opinions, recommendations and

---

[2] The majority claims that judicial review would not be limited to the administrative record because the Plaintiffs have raised ultra vires claims in addition to their APA claims. Maj. Ord. at 19. But the district court did not require the production of the ARRPs to support its analysis of the Plaintiffs' ultra vires claims. Rather, the district court concluded that the Plaintiffs were likely to succeed on the merits of their ultra vires claims because the President, OMB, and OPM violated separation of powers and therefore exceeded their lawful authority in ordering the agencies to engage in RIFs and reorganizations.

6

deliberations comprising part of a process by which governmental decisions and policies are formulated'" (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001))).[3]  The ARRPs meet both requirements, as they provided recommendations for potential RIF and reorganization plans before the agencies implemented their final decision.[4]

The privilege "although not absolute, require[s] careful consideration by the judiciary, even when [it has] not been clearly or persuasively raised by the government." *Karnoski*, 926 F.3d at 1207.  Its "unique features" suggest that, when a district court orders production of such deliberative documents, "there is no other adequate means of relief" beyond mandamus. *Id.* at 1203.

---

[3] Contrary to the majority, our cases do not limit the deliberative process privilege to personal opinions alone.  Maj. Ord. at 15–16.  Even *Coastal States Gas Corp. v. Dep't of Energy*, the out-of-circuit case on which the majority relies, lists communications that are "subjective or personal" in nature as just one example of the types of documents protected by the deliberative process privilege.  617 F.2d 854, 868 (D.C. Cir. 1980).

[4] The deliberative process privilege is equally applicable outside the APA context. *See, e.g.*, *Warner Comm'ns*, 742 F.2d at 1161–62 (applying privilege in action to block a proposed joint venture under the Federal Trade Commission Act); *United States v. Fernandez*, 231 F.3d 1240, 1246–47 (9th Cir. 2000) (applying privilege to documents related to government's request for authorization to pursue death penalty).  To the extent the district court ordered production of the ARRPs to assess the ultra vires claims, the deliberative process privilege would still apply.

7

Special considerations inform courts in deciding whether discovery of such documents is warranted. *See* Order, *U.S. Doge Service v. Ctr. for Responsibility and Ethics in Washington*, No. 24A1122 (U.S. June 6, 2025). Courts must consider "whether the District Court's actions constituted an unwarranted impairment of another branch in the performance of its constitutional duties." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 390 (2004). Ordinarily, courts limit their evaluation to "reflect[] the recognition that further judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government and should normally be avoided." *Dep't of Commerce*, 588 U.S. at 780–81 (citation modified).

Here, the district court clearly exceeded the scope of its authority. Judicial review "is ordinarily limited" to the administrative record, *id.* at 780, subject to limited exceptions.[5] Not only did the district court err in failing to decide whether the ARRPs were part of such record, but it further erred by failing to decide

---

[5] The majority claims that there is no conventional administrative record because the government's RIFs and reorganizations have been carried out without the processes that would ordinarily produce such a record. Maj. Ord. at 18–19. However, Plaintiffs themselves sought production of the administrative record in the district court and contend that such a record should be available. While government counsel noted at oral argument that he was unsure whether "an administrative record has even been put together for a RIF," he did not suggest that such a record does not exist or could not be compiled.

8

**Reh'g.Add.32**

whether an exception to that general rule was applicable, and by putting the burden on the government to show that an exception to the rule did *not* apply.[6]  Rather, to justify an order compelling extra-record discovery, the district court must find that a narrow exception applies, not merely assert that exceptions are possible.  *See Dep't of Commerce*, 588 U.S. at 781; *Blue Mountains Biodiversity Project*, 99 F.4th at 445 ("Deliberative documents, which are prepared to aid the decision-maker in arriving at a decision, are ordinarily not relevant to" assessing the lawfulness of agency action) (citations omitted).

Furthermore, the district court clearly erred by failing to address separation of powers concerns.  Generally, courts may not intrude "into the workings of another branch of Government."  *Dep't of Commerce*, 588 U.S. at 780-81.  Courts "may not reject an agency's stated reason for acting simply because the agency might also have had other unstated reasons," and they "may not set aside an agency's policymaking decision solely because it might have been . . . prompted by an Administration's priorities."  *Id.*  Inquiring into the "mental processes of administrative decisionmakers" requires, at minimum, "a strong showing of bad

---

[6] The majority errs by determining, based on its own fact-finding, that the ARRPs would be part of any administrative record and may be disclosed to the district court and plaintiffs' counsel.  Maj. Ord. at 15, 18–19.  Nothing in the record supports this determination.

9

faith or improper behavior." *Id.* (citation modified). This concern is especially strong for communications within the Executive Branch. *See, e.g.*, Order, *U.S. Doge Service*; *Cheney*, 542 U.S. at 385. The district court order implicates these concerns by compelling disclosure of pre-decisional, deliberative communications within the Executive Branch. But, instead of addressing the separation of powers, the district court considered only the possible damage to the government's employee recruitment, retention, and labor relations. The district court did not consider whether its order requiring "extra-record discovery" would implicate the separation of powers concerns that the Supreme Court identified in *Department of Commerce.* 588 U.S. at 781–82. Thus, the district court "should not have ordered extra-record discovery when it did," *id.*, and its production order was clearly erroneous.

These departures from settled principles establish that the district court's production order is clearly erroneous as a matter of law.[7] To conclude otherwise, the majority assumes that the ARRPs are final agency actions and then

---

[7] The other mandamus factors are also satisfied here. The district court's order is not directly appealable, as it is neither a final order nor an interlocutory order granting an injunction. *See* 28 U.S.C. §§ 1291, 1292(a). The government would be harmed from the disclosure of privileged deliberations to the district court and plaintiffs' counsel, which cannot be reversed or rectified by an appeal from final judgment. *See Karnoski*, 926 F.3d at 1203. Finally, the order raises "new and important problems or issues of first impression." *Id.*

10

characterizes the issues involved as ordinary "discovery matters."  Maj. Ord. at 20.

Therefore, I respectfully dissent from the denial of the government's petition for a

writ of mandamus.

11